PENNSYLVANIA STEEL CO. v. WASHINGTON & BERKELEY BRIDGE CO.

(District Court, N. D. West Virginia. April 2, 1912.)

1. CONTRIBUTION (§ 5*)—JOINT WRONGDOERS.

The rule that, in a case of equal or mutual fault, the condition of the party defending is the better one, based on the principle of public policy that there is no contribution between wrongdoers, applies only in cases where there has been an intentional violation of law, and the wrong doer is presumed to have known that the act was unlawful, and not where the injury occurs out of a duty resting primarily on one of the parties, and but for his negligence there would have been no cause of action against the other.

[Ed. Note.—For other cases, see Contribution, Cent. Dig. §§ 6–9; Dec. Dig. § 5.*]

2. INDEMNITY (§ 13*)—NEGLIGENCE—PERSONS ULTIMATELY LIABLE.

In negligence cases based on the failure to perform legal duties and obligations—acts not malum in se but malum prohibitum—a party secondarily liable may recover indemnity against the party primarily liable.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 29–35; Dec. Dig. § 13.*]

3. STIPULATIONS (§ 14*)—CONSTRUCTION—EFFECT.

Where, in a suit by one of two joint tort-feasors to recover indemnity for a liability enforced in a prior action by the person injured, a demurrer was filed to the declaration, and a stipulation authorizing the court in passing on a demurrer to consider the record in the original action with the evidence and contract introduced therein, such stipulation did not authorize the court to determine issues of fact tendered by the declaration.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 24–37; Dec. Dig. § 14.*]

4. INDEMNITY (§ 15*)—JOINT TORT-FEASORS—PERSONS PRIMARILY AND ULTIMATELY LIABLE—NATURE OF ACTION.

Where a person injured has recovered judgment against a defendant claiming to be secondarily liable only, the right of the latter to recover indemnity against the person primarily liable is not based on contract, but on tort to indemnify, for which no promise express or implied arises,

warranting resort to assumpsit, and hence such relief is properly sought by a declaration in trespass on the case.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 36–47; Dec. Dig. § 15.*]

5. INDEMNITY (§§ 3, 9*)—CONTRACT—CONSTRUCTION—EJUSDEM GENERIS—"OR OTHERWISE."

Plaintiff, having contracted to construct the superstructure of a bridge, agreed to indemnify the bridge company against all liability or damage on account of accident whether occasioned by the omission or negligence of plaintiff, its agents, or workmen "or otherwise," during the continuance of the agreement, plaintiff to pay all judgments recovered by reason of such accident by reason of any suit or suits against the bridge company, including costs, expenses, etc., and to give the bridge company an indemnifying bond against all claims for damages to persons or property of whatsoever nature arising during construction of the bridge. *Held*, that the words "or otherwise" did not broaden the scope of plaintiff's liability which was limited to accidents arising from acts of negligence and omissions by plaintiff, its agents and servants, and, so construed, was not contrary to public policy.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 2–6, 16, 17; Dec. Dig. §§ 3, 9.*]

At Law. Action by the Pennsylvania Steel Company against the Washington & Berkeley Bridge Company. On demurrer to declaration. Overruled.

The plaintiff, a corporation under the laws of Pennsylvania, has filed a declaration in trespass on the case against the defendant, a corporation under the laws of West Virginia, in which it substantially alleges that the defendant, being duly authorized to construct a bridge over the Potomac river between the counties of Washington, Md., and Berkeley, W. Va., entered into a contract with the Elmore & Hamilton Contracting Company to construct the abutments and piers for said bridge in concrete; that said company did so construct such abutments and piers; that by subsequent contract between plaintiff Steel Company and defendant Bridge Company the plaintiff was to erect the iron or steel superstructure upon said piers; that while erecting such superstructure, under this contract, and under the supervision and direction of defendant's engineer, authorized by contract with defendant to supervise all work done by contractors, and while plaintiff and its employés were using due care and caution, pier No. 10, "being green, defective, and insufficient," of which condition defendant had knowledge, or by the exercise of reasonable care and caution on its or its engineer's part could have known, broke down under the weight of the structural iron or steel being placed thereon by plaintiff under the instruction and supervision of defendant's engineer, by reason whereof Frank L. Benning, one of plaintiff's employés, was thrown from the bridge many feet into the river below and greatly injured; that said Benning instituted an action on the case in Washington, Md., against plaintiff to recover damages for such injury, which suit was defended by plaintiff but resulted in verdict and judgment against it, in favor of Benning, for $13,500 and costs; that said judgment has been paid by plaintiff; that after institution of said action by Benning plaintiff served written notice upon defendant of the pendency thereof, authorizing it to appear and make defense thereto, and, further, that plaintiff would hold it responsible for any recovery had therein. A second count alleges, in addition, a practice and custom of the trade in the construction of bridges for the contractor for the superstructure to rely upon the inspection of the bridge company's engineer as to the foundations on which the superstructure must rest, and not have its own engineer make such inspection, and that in this instance such custom was, followed by plaintiff. To this declaration a demurrer has been interposed and a stipulation of parties entered of record made, to the effect that, in determining this demurrer, the court may consider

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the record and evidence in the Benning Case, and all the contracts set forth and referred to in the declaration.

Faulkner, Walker & Woods and Lane & Keedy, for plaintiff.
Wagaman & Wagaman and Brown & Brown, for defendant.

DAYTON, District Judge (after stating the facts as above). It is insisted by counsel for demurrant that this declaration is one in trespass on the case alleging a duty owing it by the defendant, negligence on defendant's part in the performance of that duty, and resultant injury to plaintiff in consequence; that assumpsit, and not trespass on the case, will lie to secure indemnity and contribution wherein allegations that defendant "expressly or impliedly promised to pay" are essential, and wholly wanting and nonessential in the action of case. Therefore demurrant insists:

First. The plaintiff's own case, as made out by the declaration and each count thereof, together with the record in the Benning Case, shows that the plaintiff is guilty of negligence which directly contributed to the injuries, the damages for which are sought to be recovered in this suit.

[1] In support of this proposition, counsel cite the facts that Benning, in his action, charged the plaintiff Steel Company with negligence, which was denied by its plea of not guilty, but which was conclusively established by the verdict of the jury and the judgment of the court of competent jurisdiction trying the issue joined on such plea. Therefore, although it may be assumed that the Bridge Company was also negligent in the premises, the well-known rule that in pari delicto potior est conditio defendentis must be given application here. This rule is based upon the principle of public policy that there is "no contribution between wrongdoers." It is well settled, however, that this principle applies appropriately only to cases where there has been intentional violation of law, and where the wrongdoer is to be presumed to have known that the act was unlawful. It fails when the injury grows out of a duty resting primarily upon one of the parties, and but for his negligence, there would have been no cause of action against the other. Anderson, Dic. of Law, 252; Chicago v. Robbins, 67 U. S. 418, 17 L. Ed. 298; Robbins v. Chicago, 4 Wall. 657, 18 L. Ed. 427; King v. U. S., 1 Ct. Cl. 38; Town of Hamden v. New Haven & N. Co., 27 Conn. 158; Severin v. Eddy, 52 Ill. 189; Pfau v. Williamson, 63 Ill. 16; Gridley v. City of Bloomington, 68 Ill. 47; Catterlin v. City of Frankfort, 79 Ind. 547, 41 Am. Rep. 627; Portland v. At. & St. L. R. Co., 66 Me. 485; Ches. & O. Canal Co. v. Allegheny Co. Com'rs, 57 Md. 201, 40 Am. Rep. 430; Gray v. Boston Gaslight Co., 114 Mass. 149, 19 Am. Rep. 324; Churchill v. Holt, 127 Mass. 165, 34 Am. Rep. 355; City of Wabasha v. Southworth, 54 Minn. 79, 55 N. W. 818; Brooklyn v. Brooklyn City R. Co., 47 N. Y. 475, 7 Am. Rep. 469; Oceanic S. N. Co. v. Compania, 134 N. Y. 461, 31 N. E. 987, 30 Am. St. Rep. 685; Philadelphia Co. v. Central Traction Co., 165 Pa. 456, 30 Atl. 934; Maxwell v. L. & N. R. Co., 1 Tenn. Ch. 8; Batty v. Duxbury, 24 Vt. 155; Ladd v. Waterbury, 34 Vt. 426; City of Norwich v. Breed, 30 Conn. 535; C. & N. W. Ry. Co. v. Dunn, 59 Iowa, 619, 13 N. W. 722; Milford v. Holbrook, 9 Allen

(Mass.) 17, 85 Am. Dec. 735; Minneapolis Mill Co. v. Wheeler, 31 Minn. 121, 16 N. W. 698; Old Colony R. Co. v. Slavens, 148 Mass. 363, 19 N. E. 372, 12 Am. St. Rep. 558; Houston & T. C. Ry. Co. v. Williams (Tex. Civ. App.) 31 S. W. 556.

[2] Careful consideration of these and other similar authorities must inevitably lead to the conclusion that in negligence cases based not upon willful wrongdoing, but growing out of legal duties and obligations—acts not malum in se but malum prohibitum—a clear distinction must be drawn between the liability of the party primarily negligent and that of one secondarily so to the extent of being liable to a third party injured. In such case, it is well settled that the second party, while he may not escape liability to the third party injured, may hold the first party, primarily negligent, for indemnity. Such ruling is sound in both law and good morals, in that it secures greater care on the part of all engaged in the work, and lessens the danger of accidents. While this is true, it is also true that the question as to which party is primarily negligent must be carefully determined from the facts in each case. It by no means always follows that the owner, because he is having the work done, is so negligent. The contractor may, by his contract, be made wholly independent of the owner's control or direction, his personal act, without knowledge or consent of the owner, may be the direct cause of injury, a direct result of his want of care, proper qualifications, adequate knowledge of or failure to properly inspect the work, its conditions and surroundings, which he is undertaking to do. This case presents an illustration of the difficulty that may arise in so determining liability. It is insisted by defendant that there is no allegation that this pier 10 was unsafe because of improper workmanship or materials, but that it collapsed solely because the cement in it was not given time to harden. Counsel for plaintiff insist that, while this may be true, the plaintiff in seeking to erect the superstructure on it was doing so under the direction of the defendant's engineer and agent. Per contra counsel for defendant insist that this engineer was not its agent, but an independent contractor of it under the express terms of a contract existing between it and such engineer. Without expressing any opinion as to these contentions, it seems clear that the mere statement of them is sufficient to show that these questions are purely ones of fact and cannot be determined upon demurrer, even under the terms of the stipulation filed.

[3] Under the terms of this stipulation, I am authorized, so far as I deem pertinent in passing upon this demurrer, to consider the record of the Benning Case with the evidence and contract introduced therein. This stipulation cannot permit me to determine the facts that may or may not be presented in this cause upon trial. They may or may not be the same as those introduced on the trial of the Benning Case. I can only say that I regard the allegations of the declaration to be sufficient to charge this engineer to be the agent of defendant, and acting as such, to have directed and advised plaintiff to impose the superstructure upon this pier at the time he did without proper knowledge and inspection of its immatured condition. So far as the form of action is concerned, I find in the Robbins Case, hereinbefore cited

from 4 Wall. 657, 18 L. Ed. 427, the declaration was in case, not assumpsit, and, so far as I can find in all the reported cases of the kind, under common-law pleading, such form of action has been resorted to and sustained.

[4] The reason seems to be based upon the principle that while indemnity is sought, and the measure of recovery may be fixed by the amount of the recovery had against the plaintiff seeking indemnity, yet the original and fundamental basis of recovery is not contract, but tort to indemnify for which no promise express or implied arises, warranting resort to the action of assumpsit. This principle I regard as sound, and I am in full accord with it.

[5] This disposes substantially of all the points relied upon in demurrer, except the second, which by reason of the stipulation it is insisted may be considered. While it is doubtful whether it can·be so considered, because the contract upon which it is based between plaintiff and defendant is not made a part of the declaration, but only allegations are made of its execution and of its terms sufficient to introduce it as a part of the evidence necessary to recovery, yet, inasmuch as the question raised touching it clearly appears to be one that immediately upon its introduction will arise and require this court's construction, I have deemed it best to consider it here and now. The tenth paragraph of this contract is as follows:

"As according to the terms of the accompanying specifications, which form a part of this contract, the party of the second part [plaintiff Steel Company] is to indemnify the party of the first part [defendant Bridge Company] against all liability or damage on account of accidents, whether occasioned by the omission or negligence of itself, its agents, or its workmen or otherwise during continuance of this agreement, it is hereby agreed that the party of the second part shall be promptly and duly notified in writing by the party of the first part of the bringing of any such suit or suits, and shall be given the privilege of assuming the sole defense thereof. The party of the second part is to pay all judgments recovered by reason of accidents in any such suit or suits against the party of the first part, including all legal costs, court expenses and other like expenses."

The paragraph of the specifications referred to is as follows:

"Contractor will be required to give a satisfactory bond in the sum of $10,000 indemnifying the Bridge Co., against all claims for damage to persons or property of whatsoever nature arising during the construction of the bridge and as a guarantee that the material will be delivered and erected in accordance with the contract."

Counsel for both sides seem to assume that these provisions are broad enough in terms to protect the Bridge Company from its own negligence, whether its act was or was not the primary cause of injury; in short, a complete indemnity against all claims for damages to person or property of whatever nature arising during the construction of the bridge.

While conceding this, however, counsel for plaintiff insist that such provisions are absolutely void as against public policy, and cite in support of such contention the decision of the Supreme Court of Virginia in Johnson, Adm'r, v. R. & D. R. R. Co., 86 Va. 978, 11 S. E. 829.

A careful consideration of this case does not in my judgment warrant the broad and sweeping construction given it by counsel, whereby

all contracts agreeing to indemnify against negligence that may occur in manufacturing, mining, construction, and other similar operations by private corporations and individuals, would be held void as against public policy, and if such construction can be placed upon its ruling, with the utmost deference, I must be permitted to dissent therefrom. The old English Common Pleas Judge, Burroughs, in Richardson v. Mellish, 2 Bing. 252, declared the doctrine of public policy to be "an unruly horse, and when you once get astride of it you never know where it may carry you. It may lead you from sound law; it is never argued at all but when all other points fail." The vast number of negligence cases being brought and determined in the courts of to-day demonstrate that seldom, if ever, do such corporations and individuals willfully, wantonly, and knowingly do injury either to the public or to their employés; that, while negligence is still classed as tort, it generally results from some unwitting neglect of precaution or duty in the premises. While, therefore, it may be perfectly plain that no one can go to another and secure indemnity against the damages to arise from his willful, premeditated, and determined purpose to kill or injure another, and while it may be further true that public corporations, such as railroads and like carriers of passengers, may not as a matter of public policy be permitted by contract to indemnify against negligence to passengers and their employés, yet it is clear that a distinction must be, and is, drawn by the more recent and better considered cases where such railroads even are held to be entitled to contract for indemnity against their own unintentional negligence in operations without their quasi public functions. Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry. Co., 70 Fed. 201, 17 C. C. A. 62 (see report of this case in 30 L. R. A. 193, where the authorities are exhaustively cited in argument of counsel); Stephens v. S. Pacific Co., 109 Cal. 86, 41 Pac. 783, 29 L. R. A. 751, 50 Am. St. Rep. 17; Griswold v. Ry. Co., 90 Iowa, 265, 57 N. W. 843, 24 L. R. A. 647; Greenwich Ins. Co. v. Railway Co., 112 Ky. 598, 66 S. W. 411, 67 S. W. 16, 56 L. R. A. 477, 99 Am. St. Rep. 313; Osgood v. Railway Co., 77 Vt. 334, 60 Atl. 137, 70 L. R. A. 930; Railway Co. v. Mahoney, 148 Ind. 196, 46 N. E. 917, 47 N. E. 464, 40 L. R. A. 101, 62 Am. St. Rep. 503; Railway Co. v. Voigt, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560.

Under modern conditions, when Congress and state Legislatures in this country are considering the passage of employer's liability acts, entitling employés to recover for injuries regardless of defenses of assumed risk and contributory negligence, based largely upon the proposition that under such conditions employers may know in a measure the conditions and extent of liability, and may, by general insurance, indemnify themselves against such, the courts are not warranted longer in my judgment in holding such indemnity insurance contracts void as against public policy, although under other conditions they may have in principle in some instances practically done so. As said in 24 L. R. A. 647, note to Griswold v. Railway Co., supra:

"There are many cases upon which opinions will differ, but the trend of thought at present seems to be towards greater freedom of contracting power and less governmental interference"—citing notes to State v. Loomis, 21 L. R. A. 789, and Commonwealth v. Perry, 14 L. R. A. 325.

I am therefore led to the conclusion that, if the construction placed upon this tenth clause of the contract between plaintiff and defendant by counsel on both sides be the true one, plaintiff cannot recover. But, after earnest study of it, I am convinced that such construction is not warranted. By it the Steel Company agreed to indemnify the Bridge Company "against all liability or damage on account of accidents, whether occasioned by the omission or negligence of itself [the Steel Company], its agents, or workmen, or otherwise, during continuance of this agreement," and to "pay all judgments recovered by reason of accidents in any such suit or suits against the party of the first part [Bridge Company]." What is the meaning of the words "during the continuance of this agreement," and those contained in the specifications "during the construction of the bridge"? They certainly cannot mean under the conditions and circumstances existing that the Steel Company was to indemnify against negligence and accidents occurring in the erection of the piers and abutments by the independent contracts over which it had no control. We must therefore restrict these words to refer to accidents occurring during the erection of the superstructure by the Steel Company itself. But how occurring? The contract says by reason of "the omission or negligence of itself, its agents or its workmen or otherwise." Do these words "or otherwise" broaden the scope of the Steel Company's liability to include all acts of negligence and omission on the part of the Bridge Company its agents and employés that might have been committed by it or them before the Steel Company's contract, or must they be limited by the rule of ejusdem generis requiring that in the construction of statutes, contracts, and other instruments, where an enumeration of specific things is followed by a general word or phrase, the latter is held to refer to things of the same kind as those specified? This rule is well recognized and established. And. Dic. Law, 394; Broom's Legal Maxims (7th Ed.) 651; U. S. v. Buffalo Park, 16 Blatchf. 189, Fed. Cas. No. 14,681; Reiche v. Smythe, 13 Wall. 162, 20 L. Ed. 566; City of Lynchburg v. N. & W. R. R. Co., 80 Va. 237, 56 Am. Rep. 592; Foerderer v. Moors, 91 Fed. 476, 33 C. C. A. 641; City of St. Louis v. Laughlin, 49 Mo. 564; American Manganese Co. v. Manganese Co., 91 Va. 272, 21 S. E. 466; Orange, etc., R. Co. v. Alexandria, 58 Va. 176; Gates v. Richmond, 103 Va. 702, 706, 49 S. E. 965.

It has been very recently applied by the Circuit Court of Appeals for this circuit in Hickman v. Cabot, 183 Fed. 747, 106 C. C. A. 183, where a clause "if by reason of fire, explosion or other cause" in a contract was held not to authorize the shutting down of his carbon factory by a contractor for natural gas to be used therein for the cause that its operation must be at great loss, but must be restricted to causes similar in character to fire and explosion. In view of the principles so recently enunciated by this case and by this court, whose opinions are binding upon me, I feel compelled to restrict the words "or otherwise" used here in this contract to acts of negligence of the Steel Company itself, its agents, its workmen or ones of like character arising in its carrying out its contract in the erection of the superstructure,

and as not including the negligence of the Bridge Company, its engineer, or agents, if such negligence was primarily responsible for the accident.

I will therefore overrule the demurrer.