# John Frederick Wallach et al., Appellants, v. Cornelius K. G. Billings et al., Appellees.

## Gen. No. 20,733.

1. EQUITY, § 146*—*when bill by stockholders against directors of corporation not multifarious.* On general demurrer to a bill by stockholders of a bank seeking to enforce against one of its directors liability for losses sustained by the bank by reason of the unlawful manipulation of its funds by its president, where the liability sought to be enforced against such defendant was predicated on allegations that (1) defendant failed to perform his duties as such director, and (2) that such failure was due to defendant's "secret" agreement with such president to abdicate his functions as such director, allegations *held* to present only the single ground of failure to perform defendant's official duties, and not to justify the legal conclusion of an independent and different liability, for the reason that from the mere allegation that the understanding was secret it was not necessarily inferable that defendant entered thereinto with intent to facilitate unlawful acts or with knowledge that any such were being committed, and also because such an understanding, unless made with an unlawful or ulterior purpose, which was not alleged, was not inconsistent with a mere understanding that defendant would act as director if not required to take an active part in the affairs of the bank.

2. EQUITY, § 147*—*how bill by stockholders against director of corporation should be construed.* Where, in a bill seeking to enforce against a director of a bank liability for losses sustained by it while he held office as such director, the liability sought to be enforced is predicated on allegations that he failed to perform his official duties as such director, while at the same time such bill charges directors other than such defendant with more than mere nonfeasance in regard to the transactions resulting in such losses, such allegations tend to support the contention that such defendant's failure to perform his duties was not the proximate cause of the losses sustained by the bank, the bill being in such case construable most strongly against the pleader.

3. BANKS AND BANKING, § 43*—*what are duties of nonresident directors of national bank.* The National Banking Act (U. S. Rev. St., sec. 5146), providing "that at least three-fourths of the directors" of a national bank "must have resided in the State * * * in which the association is located for at least one year" prior to election as such, permits the election of nonresident directors by a national

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

bank, and contemplates that such nonresident directors shall not give the same attention to the affairs of the bank as that required of those directors who are resident.

4. EQUITY, § 147*—*how bill by stockholders of bank against director should be construed.* On general demurrer to a bill seeking to enforce against a nonresident director of a bank, liability for losses sustained by the bank while defendant held office as such director, where such liability is predicated on allegations that such defendant failed to perform his duties as such director, the question raised by the demurrer is whether the bill shows that such failure of defendant was the proximate cause of the losses alleged, and not whether a nonresident director can escape liability for failure to participate in the administration of the bank's affairs.

5. EQUITY, § 148*—*when bill does not sufficiently charge actual knowledge of matters.* Where in order to maintain a cause of action it is essential that defendant should have actual knowledge of the matters on which the cause of action is predicated, on general demurrer to the bill, an allegation in a bill that defendant "knew or by the exercise of ordinary care would have known" of such matters does not sufficiently charge such actual knowledge.

6. BANKS AND BANKING, § 43*—*what is liability of nonresident director of bank for losses of bank.* A nonresident director of a national bank who is not shown to have actual knowledge of an unlawful manipulation of the bank's funds, resulting in losses to the bank, or who is not shown to have assented to or connived in such unlawful manipulation, cannot be placed in the same category with resident directors who are shown to have known of, assented to, and connived in such unlawful acts, and are chargeable with a greater degree of activity in the affairs of such bank, so as to make the acts of such nonresident director the direct and proximate cause of the losses sustained.

7. BANKS AND BANKING, § 43*—*when director not liable for acts of other directors.* A director of a bank is not liable for the mere omission to watch and restrain other directors from wrongdoing, or for the misconduct of other directors, not participated in by such director as a wrongdoer, provided that such director has no wrong intention in such omission, and has no knowledge of wrongdoing by others.

8. EQUITY, § 148*—*when bill insufficient to show that failure of director to perform duties proximate cause of loss to bank.* On general demurrer to a bill seeking to enforce against a director of a bank liability for losses sustained by the bank while such defendant held office as such director, predicated on allegations that defendant

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

failed to perform his duties as such director, averments *held* to show that such failure by defendant was not the direct and proximate cause of such losses.

9. EQUITY, § 114*—*when bill demurrable for want of necessary parties.* A bill seeking to enforce against a director of a bank liability for losses sustained by the bank while defendant held office as such director is demurrable for want of necessary parties, where others who held office as directors of such bank at the time when such losses were sustained are not made parties to the bill, for the reason that in case defendant is held liable he would be entitled to contribution from such codirectors, who should be bound by the decree.

10. EQUITY, § 114*—*how objection of want of necessary parties may be taken.* Where a final decree under a bill cannot be recovered without affecting the interests of persons not made parties thereto, the objection of want of necessary parties may be taken by general demurrer, at the hearing, on appeal or by writ of error, although if the objection be the want of proper though not necessary parties, such objection, by correct rules of practice, should be taken by demurrer, plea or answer.

11. BANKS AND BANKING, § 43*—*when director entitled to contribution from codirectors for losses paid.* A director of a bank, who was held liable for losses sustained by the bank while holding office as director, on the ground that he failed to perform his duties as director, is entitled to contribution from his codirectors whether the liability enforced against defendant be deemed as sounding in contract or tort, as defendant would be entitled to such contribution, though a tort feasor, where it appeared that defendant was guilty of no intentional wrong, and was chargeable with a lesser degree of delinquency than such codirectors; and, if such directors be deemed trustees, all are guilty of a breach of duty in not attending to the affairs of the bank and are bound to contribute.

12. EQUITY, § 342*—*when dismissal of bill should be without prejudice to right to amend.* A decree dismissing a bill for want of necessary parties should be without prejudice to the right to amend the bill and bring in such parties.

13. APPEAL AND ERROR, § 971*—*when questions not considered on appeal.* Where the record shows that a bill was dismissed for want of equity, and also shows ground for dismissal for want of necessary parties, it cannot be held that such bill was dismissed for want of necessary parties in the absence of an affirmative showing that such point was raised in the trial court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Appeal from the Circuit Court of Cook county; the Hon. LOCK-
WOOD HONORE, Judge, presiding.    Heard in the Branch Appellate
Court at the October term, 1914.    Affirmed.    Opinion filed December
21, 1915.

**Statement by the Court.**    This appeal is from a final
decree sustaining general demurrers to an amended
and supplemental bill of complaint as amended, and
dismissing the same for want of equity.    Said bill was
filed by complainants as stockholders in behalf of them-
selves and other stockholders of the Chicago National
Bank, after demand on and refusal by its directors to
bring the suit for the bank, to recover from Cornelius
K. G. Billings, one of its directors, for losses to the
bank resulting from his alleged negligence.

It contains many allegations unnecessary to set
forth.    After averments as to the filing of the original
bill, incorporation and suspension of the bank, the in-
terests of complainants as stockholders, and provisions
of the law and the bank's articles and by-laws relating
to its management, its officers, their duties, etc., the
bill avers, in substance, that during the existence of
the bank, from 1881 to 1905, its board of directors
elected John R. Walsh as its president; that he con-
trolled and dominated all of its business and the other
officers elected by the board; that Billings was a sworn
director from 1892 to 1905 inclusive; that from the be-
ginning of 1900 until the bank suspended, December 18,
1905, neither the board of directors nor its members
individually exercised any control or supervision over
the business and affairs of the bank but permitted them
to be dominated and controlled by Walsh as he saw
fit; that during said period Walsh personally domi-
nated and controlled large and various business enter-
prises of a speculative and hazardous character, in
which the bank was not interested financially and which
required vast sums of money to conduct; that by cer-
tain unlawful means and methods Walsh during said
period diverted to such enterprises and misappropri-

ated and misapplied large amounts of the funds of the bank, aggregating millions of dollars, resulting in losses of over $2,200,000; that the directors as a board and individually knew or by the exercise of ordinary care would have known all of these things; that Walsh had employed such unlawful means and methods also prior to said period of which notice had come to all the directors; that at different times from July, 1897, to June, 1905, the bank examiner made reports to the comptroller of currency, and the latter sent notices to the bank, calling attention to and criticising Walsh's unlawful practices, and that the board of directors and individual members were chargeable with notice thereof and by their neglect and failure to give attention to the business of the bank, suffered and allowed Walsh to continue such unlawful appropriations of the bank's funds during said period until the bank was forced to suspend, causing losses to the bank of over $2,000,000 and its shares to become comparatively worthless, which could have been prevented had they, as directors, exercised supervision and control of the bank's business and affairs; that Billings was a man of large wealth and great business skill and acumen; "that he was in no way, shape or manner subservient to or dependent upon or under the influence of John R. Walsh, or any director or officer of the bank" and that had he exercised such reasonable or ordinary care as a director of a national bank should give to its business and affairs, he could and would have discovered such unlawful transactions in apt time to have prevented such losses or the greater part thereof; that said Billings "had an express or secret understanding or agreement with John R. Walsh during the year 1901, which continued * * * until the bank suspended * * * that he would not as director do anything in the way of administering affairs of the bank, or exercise supervision of its business, and that he would not do anything as a director of the bank," and that pursu-

ant thereto, Billings utterly neglected his duties as director and by reason of such agreement and his consequent neglect of such duties became liable for such unlawful transactions independently of liability on other grounds; that by person or proxy Billings attended the annual meetings of stockholders held during the period aforesaid at which he was elected a director; that there were several directors' meetings during each year of said period attended by other directors but not Billings, at which certain specified matters came up for action; that Billings did nothing towards examining into, administering or supervising the affairs of the bank but permitted and allowed Walsh to conduct them as he saw fit; that he might have prevented such unlawful transactions by various steps indicated in the bill, among them by inducing the board of directors to appoint an auditing committee each year or investigating committee and to require detailed reports from its officers, by inducing action for the removal of Walsh and restitution of funds unlawfully taken, by informing the stockholders of such unlawful transactions that they might take some proper action, by personal examination of the bank's books and by investigation into its financial condition; that it was the duty of Billings to take these and other designated steps to prevent such unlawful transactions or their continuance; and that the consequent losses were the direct and proximate result of his neglect and failure to exercise any diligence or care whatever as a director of the bank, whereby he became liable to the bank for the sum of more than $2,200,000.

The bill alleges the demand on and refusal by the bank to institute and prosecute these proceedings, that none of complainants prior to the suspension of the bank was officially connected therewith or had knowledge or information of such unlawful transactions or that the board of directors and said Billings were neglecting their duties as directors; that since January 1,

1901, Billings has been out of the State within the statute of limitations; that Walsh became insolvent just prior to the suspension of the bank and continued so until his death in 1911; and that certain stockholders therein named including William Best, Fred M. Blount and Maurice Rosenfeld, directors of the bank during said period and equally guilty with Billings and legal representatives of other directors, since deceased, should not share in a recovery under the bill.

The relief prayed is that Billings be held and decreed liable for and on account of the wrongful neglect of his duties as such director; that the amount of loss to the bank in consequence thereof be ascertained and he decreed to pay it or so much as may be just and equitable; that the court should determine what stockholders are entitled to participate in the recovery and make distribution among them, and other incidental relief.

Newman, Poppenhusen & Stern, for appellants; Jacob Newman and Charles T. Farson, of counsel.

Sears, Meagher & Whitney, for appellee Cornelius K. G. Billings; Nathaniel C. Sears, James F. Meagher and Jesse J. Ricks, of counsel.

Mr. Justice Barnes delivered the opinion of the court.

While there are other defendants, the bill seeks recovery from Billings alone of the seven directors of the bank, on two grounds of liability, (1) his failure to give any attention whatever to his duties as a director and (2) his so-called secret agreement to abdicate his functions as such. When analyzed, however, they constitute the single charge of inattention to his official duties, for the allegations with respect to said agreement do not justify the legal conclusion of an independent or different liability. They are not such as support an inference that Billings entered into the

agreement for the purpose of doing an intentional wrong or facilitating said unlawful transactions or with actual knowledge that they were then being carried on. Such an inference does not follow merely from characterizing the understanding as "secret." The agreement described, taken with other averments in the bill, was not inconsistent with a mere understanding that Billings would remain a director if not required to return from out of the State to attend the board's meetings and take an active part in managing the bank's affairs, and we fail to see that a mere understanding to that effect, unless made for an unlawful or ulterior purpose, which is not charged, aggravates or changes the character of the negligence elsewhere charged in the bill of inattention to his official duties.

In the absence, therefore, of any averments of actual knowledge of the unlawful transactions or of a positive wrong or actual misfeasance on the part of Billings— and none appears in the bill—his liability from the facts set up in the bill rests wholly on the charge of inattention to official duties.

But construing the bill most strongly against the pleader, it charges the other directors with more than mere nonfeasance and supports appellees' contention that Billings' inaction was not the proximate cause of the bank's losses.

Billings appears to have been a nonresident director. While the bill does not expressly so aver (unless we import into it allegations of a former bill filed herein November 21, 1910, which the bill asks to be considered with reference to continuing the receivership), still the bill shows that although elected as a director from year to year he was almost continuously absent from the State during the years it is sought to hold him liable as a director, and up to the filing of the bill, returning here only on matters of personal business. The National Banking Act unquestionably recognizes

the right to elect nonresident directors. It provides "that at least three-fourths of the directors must have resided in the State, territory or district in which the association is located for at least one year immediately preceding the election, and must be residents therein during their continuance in office." Section 5146, U. S. Rev. St. It presumably contemplates some advantages from having some nonresident directors. But it may reasonably be inferred from the nature of the banking business and from the specific requirement that at least three-fourths of the directors shall be residents, and because of the inconveniences and obstacles attending nonresidence, that the act did not contemplate that nonresident directors should exercise the same vigilance and give the same attention to the bank's affairs as is manifestly required of the resident directors. As stated in *First Nat. Bank of Concord v. Hawkins,* 174 U. S. 364, referring to said act: "One of the evident purposes of this enactment is to confine the management of each bank to persons who live in the neighborhood, and who may, for that reason, be supposed to know the trustworthiness of those who are to be appointed officers of the bank, and the character and financial ability of those who may seek to borrow its money."

But as we view it, the question is not whether Billings as a nonresident director can entirely escape liability for not attending the board's meetings and participating in the administration and management of the bank's business and affairs, but whether the bill shows that the failure so to do was the proximate cause of the bank's losses for which it is sought to hold him liable. Does the bill show such a casual relation?

These essential facts stand out prominently in the bill either in the form of express averments or inferences that should, if not true, have been negatived: (1) That the losses ensued from misuse of the funds of the bank by its president Walsh; (2) that a quorum

of the bank's directors frequently held meetings, at which Billings was not present, and thereby assumed the functions of their office and undertook in some degree, at least, to supervise and transact the bank's business; (3) that they thus placed themselves in a position to know and must have known of the unlawful transactions which were of such magnitude as to involve loans of millions of dollars; (4) that they permitted Walsh to engage in such transactions, either by conniving at or assenting thereto; (5) that all of the bank's officers and directors except Billings were dominated and controlled by Walsh and permitted him to exercise control of them and the bank's affairs; and (6) that Billings had no actual knowledge of such unlawful transactions, and was guilty of no act intended to promote them.

We need not refer specifically to the several averments from which these facts are deducible, when appellants' counsel themselves say in their brief: "The bill in this case shows that Mr. Walsh absolutely dominated all the directors of the bank, *except Billings,* that none of them acted except as Walsh commanded them to act, and therefore none of them exercised the functions and duties imposed upon them by law. In fact all the directors *except Billings* simply obeyed the commands and directions of Mr. Walsh and never exercised their individual judgments respecting any matter or thing * * * ." This statement practically admits what is above summarized and recognizes what are most palpable inferences from the bill that the other directors either had actual knowledge of such unlawful transactions and assented thereto or connived at them; and in order to place Billings *in pari delicto,* counsel added to their statement, "and Mr. Billings failed to do so under this secret agreement with Mr. Walsh." But, as before stated, no such effect can be given to said agreement. The bill does not charge Billings with actual knowledge of such transactions,

and significantly fails to charge that the other directors did not know of, or connive at, or assent to them. In fact it is difficult to understand how resident members of the board sitting around the directors' table could have been ignorant of them.

The bill attempts to charge Billings with such knowledge by averments that he "knew or by the exercise of ordinary care would have known" of particular facts including the fact that the other directors "permitted, suffered and allowed" Walsh to operate the bank and carry on its business and affairs, and "did his bidding without question." But averments in this alternative form do not charge Billings with actual knowledge (*Babcock Bros. Lumber Co. v. Johnson*, 120 Ga. 1030; *Southern Bell Telephone & Telegraph Co. v. Starnes*, 122 Ga. 604; *Durell v. Hartwell, Williams & Kingston*, 26 R. I. 125), and without knowledge, connivance or assent on his part, he cannot, in our opinion, be placed in the same category as the resident directors who were chargeable therewith as well as with a greater degree of vigilance and activity, and whose conduct either by voluntary co-operation or connivance enabled Walsh to engage without restraint in such unlawful transactions and thus became the direct and proximate cause of the losses ensuing therefrom.

It is charged that Billings did not watch and restrain them. "But," as said in *Movius v. Lee*, 30 Fed. 298, "it is nowhere adjudged that all (directors) must always act, or that they must not trust one another to act, or that they are liable for the mere omission to watch and restrain the others, without wrong intention on their own part, or actual knowledge of the wrong on the part of others." It has been held, too, that a director is not liable for the misconduct of codirectors not participated in as a wrongdoer by him. *Briggs v. Spaulding*, 141 U. S. 132; *Fisher v. Graves*, 80 Fed. 590; *Commercial Bank of Bay City v. Chatfield*, 121 Mich. 641. "Even trustees," says Chief Justice Ful-

ler in the *Briggs* case, *supra,* "are not liable for the wrongful acts of their co-trustees unless they connive at them or are guilty of negligence conducive to their commission."

To avert the consequence of the mismanagement of the bank, the bill avers that Billings might have done various things therein set forth. But so far as they relate to any steps he might have taken in the ordinary exercise of his functions as a director, it is not apparent that, being the only director not dominated and controlled by Walsh, his suggestions would have been of any avail, and what he might have done to stem the disaster does not appear to have been the direct cause of it. It might have occurred just the same.

The bill charges Billings with passive negligence, but it supports the inferences of connivance or assent as aforesaid on the part of the other directors. It was brought upon the theory of liability to the bank. But to quote again from the opinion in the *Briggs* case, *supra:*

"Treated as a cause of action in favor of the corporation, a liability of this kind should not lightly be imposed in the absence of any element of positive misfeasance, and solely upon the ground of passive negligence; and it must be made to appear that the losses for which defendants are required to respond were the *natural and necessary consequences* of omission on their part."

The same doctrine has been recognized in other cases where it has been sought to hold directors of a bank liable for the negligence either of themselves or the bank's agents. (*Warner v. Penoyer,* 91 Fed. 587; *Wallace v. Lincoln Sav. Bank,* 89 Tenn. 630; *Bloom v. National United Ben. Sav. & L. Co.,* 152 N. Y. 114; *Kavanaugh v. Gould* (App. Div.) 131 N. Y. Supp. 1059.)

It is difficult, therefore, to escape the conclusion that the direct and proximate cause of the losses for which

it is sought to hold Billings was Walsh's unlawful transactions aided by the connivance, or assent, or voluntary co-operation of some if not all the other directors, and not Billings' inaction, whatever may have been his duty in the premises.

This conclusion obviates the necessity of considering any other grounds for dismissing the bill. We agree with appellees, however, that if the bill was not demurrable on the ground considered, it would be for the want of necessary parties, on the ground that Billings would be entitled to the right of contribution and they should be bound by the decree. Appellants urge that the question cannot be raised on general demurrer. But as stated in *Johnson v. Huber,* 134 Ill. 511: "It is true, that by the rules of correct practice the objection to the bill for want of proper parties should have been raised by demurrer, plea or answer; but where the omitted party is not only a proper but a necessary one, so that a final decree cannot be recovered without affecting his or her interests, the objection may be taken at the hearing, or on appeal or writ of error."

We have no doubt that whether the case be regarded as sounding in tort or contract the right of contribution would exist, for, in the former case, Billings not being charged with any intentional wrong and with a lesser degree of delinquency than the others, would have such right though a tort feasor (7 Am. & Eng. Encyc. of Law (2nd Ed.), 364; *Wanack v. Michels,* 215 Ill. 87; *Farwell v. Becker,* 129 Ill. 261; *Pennsylvania Steel Co. v. Washington & B. Bridge Co.,* 194 Fed. 1011-1013; *Vandiver v. Pollak,* 107 Ala. 547; *Lowell v. Boston & L. R. Corporation,* 23 Pick. [Mass.] 24-32); and, in the latter case, on appellants' theory that directors are liable as trustees of the corporation or the body of the stockholders (*Hooker v. Midland Steel Co.,* 215 Ill. 444; Thompson on Corporations, par. 1269), all the directors were equally guilty of a breach of duty

in not attending to the bank's affairs and would be bound to contribute. (*Machen* on Modern Law of Corporations, par. 1635.) That the other directors ought on such ground to have been made parties defendant is supported by unquestioned authority. The reason of the rule is well stated in *Mandeville v. Riggs*, 2 Pet. U. S. 482, and Perry on Trusts (2nd Ed.), sec. 876, and recognized in *Hutchinson v. Ayres*, 117 Ill. 558; Beach on Trusts, par. 542; *Cunningham v. Pell*, 5 Paige N. Y. 607; *Boyd v. Gill*, 19 Fed. 145; *Pennsylvania Steel Co. v. Washington & B. Bridge Co.*, 194 Fed. 1011; *Ramskill v. Edwards*, L. R. (1886), 31 Ch. Div. 100, and such right of contribution made them necessary parties. (*Chandler v. Ward*, 188 Ill. 322; *North Hudson Mut. Building & Loan Ass'n v. Childs*, 82 Wis. 460.)

But if the bill was dismissed for want of necessary parties, it should have been without prejudice, that an opportunity might have been given to bring them before the court. (*Thomas v. Adams*, 30 Ill. 37; 1 Daniel Ch. Pl. & Pr. (5th Ed.), p. 288, note 2.) It might be said that complainants had such opportunity when they elected to stand by their bill instead of again amending it, and from the fact that they voluntarily dismissed two of the directors out of the case. The record, however, does not disclose that the point of necessary parties was made in the court below, and the bill was dismissed for want of equity on its face as against each of the demurring defendants. While there may be some authority on such a state of facts for the unqualified dismissal of the bill, we are not disposed to hold that the dismissal was justified for want of parties in the absence of an affirmative showing that the point was raised in the court below. But for reasons already stated, the decree will be affirmed.

*Affirmed.*