## Richmond.

AMERICAN MANGANESE CO. (LIM.) v. VIRGINIA MANGANESE CO.

MARCH 28, 1895.

1. CONSTRUCTION OF STATUTES—*Particular Words Followed by General Words.*—
Where a particular class of persons or things is mentioned in a statute,
and general words follow, the class first mentioned is to be taken as the
most comprehensive, and the general words are to be restricted to other
persons or things of the same kind.

2. CONSTRUCTION OF STATUTES—*Section 3299 of the Code—Set-off.*—The mean-
ing of the words "or any other matter" used in section 3299 of the
Code is restricted by the enumerated defences which precede them, and
hence no set-off can be pleaded by the defendant which does not grow
out of the contract in suit.  Those words were added so as to allow not
only the defences particularly named in the preceding part of the sec-
tion, but all others of the same kind based upon such contract, or for
injuries growing out of it, to be disposed of in one case.

3. CONTRACT—*Construction—Acquiescence—Waiver.*—Althongh a method of
ascertaining weights may not have been in accordance with the contract
of the parties, yet long continued acquiescence, with full knowledge of
all the facts, will constitute a waiver of the right to insist on the terms
of the contract.

4. PAYMENT—*Acceptance—Discharge.*—If one owing a sum of money, the
amount of which is not ascertained and fixed, offers his creditor a certain
sum, declaring that it is in full for all that is owing him, which sum is
accepted by the creditor, such acceptance is in full discharge of the
demand.

Error to a judgment of the Circuit Court of Albemarle
county, rendered on the 19th day of October, 1893, in an ac-
tion of *assumpsit* wherein the defendant in error was the
plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

On the 29th day of April, 1882, the Virginia Manganese Company enteied into a contiact under seal with James B. White, Myron C. Davis and S. M. Donald, by which the company leased and demised to the above-named persons a certain manganese mine and certain quarries, beds, and a tract of land, "to hold and exercise the said mine, quarries, beds and seams of manganese ore   *   *   *   unto the said lessees from the first day of May, in the year eighteen hundred and eighty-two, for the term of five years,   *   *   *   yielding and paying therefor unto said lessor and its assigns a royalty of two dollars on each and every ton of twenty-two hundred and forty pounds weight of manganese ore which shall, during the said term, be raised or gotten from the said mine and premises."

The contract also contains, amongst others, the following covenants and agreements, to-wit:

"And the said lessees covenant and agree to make all shipments of said manganese ore from the Crimora station of the Shenandoah Valley Railroad, or from the Waynesboro depot of the Chesapeake and Ohio Railroad, and during the first week of each and every month during the said term, and in the first week of the month following the expiration of said term, to send to the president of the said Virginia Manganese Company all the railroad receipts for all the manganese ore shipped from both of said stations during the preceding month.

"And the said lessees covenant not to damage said manganese mine and property in any greater degree than is necessary for the extraction of manganese ore therefrom, in the best manner, for the best interest of the lessor, and further to work up all the said ore as it comes that is not altogether worthless.

"And the said lessees covenant that they will not permit any manganese ore to be removed from the said premises until the same shall have been duly weighed and entered in the

books hereinafter mentioned, and that they will daily and duly enter and keep in a book or books, to be kept for that purpose, at a proper office on the said premises, a true, particular, and complete account, in writing, of all manganese ore extracted from the said mine, and of the dealings therewith, and of the respective quantities and application thereof, so soon as such respective particulars can be ascertained, and so that the said royalties payable for the same may be readily ascertained; and will permit the lessor and his agents to inspect and examine the weighing machines used by the lessees, and will permit the lessor, its assigns or agents at all reasonable times to enter upon the said mine and premises and the works thereof, and to go through, survey, measure and inspect the said mine and works, and the condition thereof; and also at all reasonable times, upon demand, to inspect the said book or books, and all other books and entries in any wise showing the quantities of, or dealings with, any manganese ore raised from the said mine, and to take copies thereof or extracts therefrom; and the lessees covenant that they will, in the first week of each and every month during the demise deliver to the president of the Virginia Manganese Company, or the agent of said company, a full and complete account, in writing, of all manganese ore which in the course of the preceding month shall, or ought to, have been entered in such book or books as aforesaid.

"And also will, on the determination of the said term hereby granted, peaceably and quietly surrender and yield up unto the said lessor, or its assigns, all the said mines, works and premises, which, having regard to the provisions of these presents and the works which may be carried on in pursuance thereof, are capable of being so surrendered and yielded up, in good and tenantable condition and repair, and as fit for the working of said mine and works, so far as the destruction and construction of manganese mines and extraction of man-

ganese ore necessarily incident to the works to be carried on under these presents will admit of.

"It is further agreed, upon the determination of this demise, the said lessor, if it so elect, shall have the right to retain and become the owner of any or all of the buildings, machinery, and improvement which shall have been erected, or placed upon said premises by the said lessees, on paying to the said lessees the value of the said fixtures, machinery and improvements, as the said value shall be fixed by two competent persons, one of whom shall be selected by the lessees and the other by the lessor; and in case the said persons shall be unable to agree upon a valuation of the said buildings, machinery and improvements then they shall have power to call in a third person as arbitrator, and the valuation made by them shall be final."

After making said contract, the said James B. White and others assigned the same, with the consent of the Virginia Manganese Company, to the plaintiff in error. Subsequently, and after the expiration of the lease, to-wit: On the 4th day of May, 1892, the American Manganese Company sold and delivered to the Virginia Manganese Company certain personal property, consisting of the machinery, fixtures, &c. mentioned in the contract or lease, and then on the leased premises, at the agreed price of $9,000. The Virginia Manganese Company, failing and refusing to make payment, this act was brought to recover the price of said personal property. To this action the defendant pleaded the genreal issue (*non assumpsit*), and two special pleas, numbered 1 and 2 respectively. The plaintiff took issue on plea No. 1, and on the plea of *non assumpsit*, and demurred to plea No. 2. But the court overruled said demurrer, and thereupon issue was joined on plea No. 2. The two special pleas are in the following words and figures, to-wit:

## Plea No. 1.

"And the said defendant, by its attorney, comes and says that by virtue of the lease in the declaration mentioned and the rights thereby secured to it, the said defendant purchased of the plaintiff the personal property as set out in the declaration.

"And the said defendant further avers that, besides the provisions in said lease giving defendant the right to become the purchaser of said personal property at the expiration of the said lease, said lease also contained a provision requiring the lessee to pay a royalty of $2 for each and every ton of 2,240 pounds of manganese ore during the term raised or gotten from the mine on said premises, and that the lessee would not permit any manganese ore to be removed from the said premises until the same had been duly weighed and the weight thereof duly entered in a book or books to be kept for that purpose at a proper office on said premises, which books should always be open to the inspection of defendant, so that the royalty payable to defendant might be readily ascertained. And the defendant avers that the plaintiff did not comply with the aforesaid provision of said lease as to weighing and ascertaining the weight of the ore, and did not pay to the defendant $2 for each ton of 2,240 pounds of manganese ore raised or gotten from said mine, but rendered inaccurate accounts of the weights of said ore gotten from said mine, which weights were less than the true weights, and accounted for and paid to defendant the royalty only on said inaccurate and erroneous weights.

"Whereby the defendant hath sustained great loss and damage, amounting in the whole to a large sum of money, to-wit: to the sum of $——, of all which the said plaintiff had notice, to-wit: on the day and year last aforesaid.

"And the said defendant says that the said damages, amount-

ing to the sum of $5,000, are still unpaid, and are now due and owing from the said plaintiff to the said defendant, and the said defendant is ready and willing, and hereby offers in pursuance of the statute in such case made and provided, to set off and allow the same against the said sum of money supposed to be due and payable by the defendant to the plaintiff by reason of the purchase of the personal property as aforesaid. And this the said defendant is ready to verify.''

Sworn to.

### Plea No. 2.

''And the said defendant, by its attorney, comes and says for further plea in this behalf that by virtue of the lease in the declaration mentioned, and the rights thereby secured to it, the said defendant purchased of the plaintiff the personal property set out in the declaration. And said defendant further avers that, beside the provision in said lease giving defendant the right to become the purchaser of said personal property at the expiration of said lease, said lease also contained provisions by which the said plaintiff, as assignee of the original lessees, was bound to conduct its operations in said mine in a proper and judicious manner according to the approved customs of mining, and not to damage said manganese mine and property in any greater degree than was necessary for the extraction of manganese ore therefrom in the best manner for the interest of the lessor, and to surrender said property at the expiration of said lease to defendant in good and tenantable condition and repair; but the said plaintiff did not perform nor regard its said promises and undertakings, but conducted its work and operations and mining in such a careless, indifferent, unskillful, reckless and improper manner that, at the expiration of said lease, the said property of defendant was greatly injured and damaged, and in that condition was returned to defendant.

"Whereby the defendant has sustained great loss and damage, amounting in the whole to a large sum of money, to-wit: the sum of $15,000, of all which the said plaintiff had due notice, to-wit: on the day and year last aforesaid.

"And the said defendant says that the said damages, amounting to the sum of $15,000, are still unpaid and are now due and owing from the said plaintiff to the said defendant, and the said defendant is ready and willing, and hereby offers, in pursuance of the statute in such case made and provided, to set off and allow the same against the said sum of money supposed to be due and payable by the defendant to the plaintiff by reason of the purchase of the personal property as aforesaid.   And this the said defendant is ready to verify."

Sworn to.

Monthly settlements for royalties were made during the term of the lease, and an account furnished showing amount of ore shipped the preceding month, and adjusting weights, and in each instance a receipt was given "in full for the above account."   These settlements were made on the railroad weights of the ore at the point of destination, and after the ore had dried.   And, while it is true that some objections were made because "they were taking a percentage off the net weights on account of water claimed to be with the ore," yet receipts in full of the above-mentioned character were given each month, and the president of the defendant company testified: "I never made any pointed protest in writing until 1891."   The defendant company had full knowledge from the beginning that the deductions were being made.

"It was agreed between plaintiff and defendant that the sum of $4,618.47 would represent the royalty at $2 a ton on the difference between weights taken at the washer, on the property, and the railroad weights by which latter settlements for royalty were made monthly during the continuance of the lease."

Evidence was introduced by both the plaintiff and the defendant as to the condition of the mines on the termination of the lease, but it is deemed unnecessary to insert it here.

The defendant, in open court, "admitted the correctness and justness of the plaintiff's claim," and thereupon, the case being argued and submitted on the evidence adduced, the jury found the following verdict, to-wit:

"We, the jury, find for the plaintiff, and assess its damages at $9,000, with interest on $2,250, part thereof from May 4, 1892; on $1,687.50, another part thereof, from July 4, 1892; on $1,687.50, another part thererof, from September 4, 1892; on $1,687.50, another part thereof, from November 4, 1892; on $1,687.50, the residue thereof, from January 4, 1893, subject to a set-off of $7,381.53, on account of improper conduct of mining operations, with interest from January 4, 1893, until paid."

Whereupon the plaintiff moved the court to set aside the verdict and grant it a new trial, on the ground that the same was contrary to the law and evidence, and that the damages awarded the defendant were excessive. But the court overruled the motion, and the plaintiff excepted. The court certified the evidence and not the facts.

*Richard P. Bell*, for the plaintiff in error.

*Thos. S. Martin* and *Geo. Perkins*, for the defendant in error.

BUCHANAN, J. : The first assignment of error in this case is to the action of the Circuit Court in overruling the demurrer of the plaintiff in error, which was the plaintiff in the court below, to special plea No. 2, filed by the defendant.

The demurrer raises the question whether under our statute

(section 3299 of the Code), allowing special pleas of set-off to be filed, a defendant can set up a claim for unliquidated damages founded upon a contract other than the contract sued on by the plaintiff.    The claim of the defendant that the contract sued on and the contract set up in its plea, for the alleged breach of which it seeks damages, are parts of the same contract, cannot be sustained, as the pleadings show very clearly that they are separate and distinct agreements.  The defendant insists that the provisions of section 3299 of the Code, which allows a defendant to plead "any other matter, as would entitle him either to recover damages at law from the plaintiff or the person under whom the plaintiff claims, or to relief in equity, in whole or in part, against the obligation of the contract" sued on, is sufficiently broad to allow him to plead "any cause of action arising also on contract, express or implied, and existing at the commencement of the action, and such counter-claim may be either for liquidated or unliquidated damages."

If the term "or any other matter" authorizes a defendant to make such a defense, is it not also sufficiently broad to authorize him to set up any claim for damages that may be due him arising out of tort as well as contract, and existing when plea is filed as well as when the action is brought ?  Why limit it to claims arising out of contracts, or to causes of action existing when the plaintiff institutes his action ?  There is nothing in the term "or any other matter" which justifies a construction which would include the one and exclude the other.   The language of the term "or any other matter" is sufficiently broad, considered by itself, to include both of the defenses named; but considered in connection with its context and tested by settled rules of construction, I do not think it includes either.   One of these rules of construction is that general words may be limited to the same genus or class as the specific words which precede them.

In Sutherland on Statutory Construction (section 268) it is said that "when there are general words following particular and specific words, the former must be confined to things of the same kind."

In Broom's Legal Maxims (side page 651) the rule is laid down as follows: "Where a particular class [of persons or things] is spoken of, and general words follow, the class first mentioned is to be taken as the most comprehensive, and the general words treated as referring to matters *ejusdem generis* with such class; the effect of general words when they follow particular words being thus restricted."

Sedgwick, in his work on Construction of Statutes (page 361), says: "Where general words follow particular words, the rule is to construe the former as applicable to things or persons particularly mentioned."

The decisions of the courts fully sustain the text-writers, that this is the true rule of construction in such cases, subject to certain limitations not necesssary to be mentioned here. *City of Lynchburg* v. *Norfolk & W. R. R. Co.*, 80 Va. 237; *Ashbury Railway, &c., Co.* v. *Riche*, L. R. 7 H. L., at pages 664, 665; *Insurance Co.* v. *Hamilton*, 12 App. Cas. 484, 486; *People* v. *New York & M. B. Ry. Co.*, 84 N. Y. 565; *State* v. *McGarry*, 21 Wis. 496; *St. Louis* v. *Laughlin*, 49 Mo. 559.

Applying this rule of construction to the language under consideration, and the conclusion necessarily follows that unliquidated damages based upon breach of a contract, other than the contract sued on by the plaintiff, cannot be set up in a plea, under section 3299 of the Code. The particular defenses provided for in the preceding words of that section are: (1) Failure in the consideration of the contract; (2) fraud in its procurement; (3) breach of warranty of the title or the soundness of personal property, for the price or value whereof he entered into the contract.

Each of these defenses is based upon matters directly con-

nected with, and injuries growing out of, the contract sued on. The "plain purpose" of the legislature in enacting that section of the Code, as it now stands, was, as Judge Moncure says in *Huff* v. *Broyles*, 26 Gratt. 283, 285, "to give precisely the same measure of relief, on a plea filed under the same, as could be obtained in an independent action brought for the same cause, and to prevent one cause of action from being divided into two." The term "or for any other matter" was added so that such purpose could be fully accomplished by allowing, not only the defenses particularly and specifically named in the preceding part of the section, but to allow all defenses of that character or kind based upon such contract, or for injuries growing out of it, to be disposed of in one case. This is the construction put upon it by Mr. Minor and Mr. Barton (4 Minor's Inst. p. 796; 1 Bart. Law. Prac. 514); and is, I think, clearly the true construction. The Circuit Court ought, therefore, to have sustained the demurrer to special plea No. 2.

The second assignment of error is as to the mode of ascertaining the damages resulting to the defendant for the alleged breach of the contract set up in special plea No. 2, but since that question cannot arise upon the next trial of the cause, it is unnecessary to decide it.

The next and last assignment of error is, that the jury, upon the evidence in the cause, ought not to have found that anything was due the defendant for royalties on manganese ore, as claimed by the defendant in special plea No. 1, and that the verdict of the jury on this question was contrary to the evidence, and should have been set aside.

The contract of lease provided that the manganese ore taken from the leased premises should be weighed before it was shipped, but the contract is not definite and clear whether the ore was to be weighed as it came wet from the washer, and a royalty of $2 per ton paid on that wet weight, or whether it

was to be weighed after it had dried out, and the royalty paid on its dry weight.   The evidence, considered on a demurrer to evidence, shows that the ore as it came wet from the washer was about 3 per cent. heavier than it was thirty-six hours afterwards.   The ore was weighed as it came wet from the washer, and was at once shipped by the railroad to Pennsylvania, and weighed by the railroad company when it reached its destination, and upon such railroad weight the freights were paid and the royalties adjusted at the beginning of each month, for the ore shipped the preceding month, during the seven years the plaintiff operated the lease.   A full statement of the ore shipped each month, the adjustment made as to weights, and the condition of the accounts between the parties for such month, were furnished by the plaintiff to the defendant at the beginning of each month for the preceding month.   With each statement a check was sent in payment of the balance appearing to be due for such month, and receipts taken every month by the plaintiff from the defendant in the following words, except as to dates and amounts:

"Received, March 9th, 1891, of the American Manganese Company, Limited, twenty-four hundred twenty-two 63-100 dollars in full for the above account.

"$2,422.63."

The defendant does not seem to have been entirely satisfied with the plan of weighing adopted by the plaintiff, and made objections frequently to the deductions made on the net weights, but it continued during the whole seven years to receive these monthly statements, returns and payments, and to give receipts in full for the balance due according to each monthly statement and return.   If the defendant objected to the method adopted by the plaintiff for ascertaining the amount of manganese ore upon which it was to receive royalties, or had cause of complaint that the statements and returns made were incorrect for any cause, it was its duty to have

made known and to have insisted on its objections to the plaintiff, and to have refused to make monthly settlements, receive payment, and give receipts in full, as it did.

Although the methods of ascertaining the weight of the manganese ore may not have been in accordance with the agreement of the parties, the long-continued acquiescence of the defendant in such methods, with full knowledge of all the facts, was a waiver of its rights to insist upon the terms of such contract upon that point. If one owing a sum of money, the amount of which is not ascertained and fixed, offers his creditor a certain sum, declaring that it is in full for all that is owing him, which sum is accepted by the creditor, such acceptance is in full discharge of the demand. *Donohue* v. *Woodbury*, 6 Cush. 148; *McDaniels* v. *Lapham*, 21 Vt. 222, etc.; *McDaniels* v. *Bank*, 29 Vt. 230, etc.

Again, if the defendant knew of any irregularity or had ground of complaint at the time these monthly statements, returns and payments were made, it was the duty of the defendant to have made known and insisted upon its objections then; but, if, instead of doing so, it accepted such payments, and gave receipts in full for the amounts shown to be due by such settlements and returns, it is concluded by the original amounts as fully as if formal and final settlement of accounts had been made between the parties, and the defendant cannot now go behind such settlements and receipts in full without showing that there was fraud or mistake in weighing the ore, or in making returns thereof, according to the method actually adopted for weighing and making such returns. *Shillingford* v. *Good, trustee*, 95 Pa. St. 25-34.

The verdict of the jury was contrary to the evidence upon the issue made upon this plea, and the court ought to have set aside the verdict upon that ground, on the motion of the plaintiff.

I am of opinion, therefore, that the judgment of the trial court should be reversed, the verdict set aside, and a new trial ordered, to be had in accordance with this opinion.

The other judges concur with BUCHANAN, J.

REVERSED.