## Staunton.

## COX AND ANOTHER V. HAGAN.

September 17, 1919.

1. BILLS NOTES AND CHECKS—*Plea that two of Co-Makers were Sureties Only—Case at Bar.*— In an action by the indorser of a note, who had paid and taken up the note upon default, against the makers thereof, two of the makers filed a special plea alleging, in substance, that although their signatures appeared on the note as co-makers, they were not in fact principal obligors but sureties only for certain co-makers of the note, the latter being in truth the principal obligors. The plea, however, did not allege that the plaintiff had any notice of such suretyship relation of the parties before he endorsed the note.

    *Held:* That there was no error in the action of the court below in sustaining the general objection of the plaintiff to the special plea.

2. BILLS, NOTES AND CHECKS—*Co-Maker as Surety—Parol Evidence—Notice.*—While as between themselves parol evidence is admissible to show the actual relations to one another of apparent joint makers of a note, as that the relationship of surety in truth exists as to one or more of them, yet such evidence is admissible only against parties having knowledge of such relationship at the time of the entering into the contract by them. If a person sign a note as maker, but is, in fact, a surety, and there is nothing on the face of the note to show his true relation, he will be treated and considered as a principal, with respect to all who have no notice of the suretyship.

3. BILLS, NOTES AND CHECKS—*Co-Maker as Surety—Parol Evidence—Notice—Liability of Prior Indorsers to Indorser who Takes Up Note—Case at Bar.*—In the instant case the plaintiff was the last indorser on the note, other than the payees and indorsees thereof named therein, and paid and took up the note upon default. An indorser of a note who, upon the default of the maker, satisfies the demands of the indorsee, and takes up the note, becomes the lawful holder and may enforce the terms of the contract against all prior indorsers as well as against the maker. It is, therefore, immaterial, so far as the plaintiff's right of action was concerned, whether the co-makers who filed the special plea referred to in syllabus 1 were makers

or indorsers of or sureties on the note. As to the plaintiff they were all principal obligors, unless indeed there had been an agreement between themselves and the plaintiff that their obligation should be otherwise, which the plea does not allege. Hence the plea under consideration interposed no valid defense to the action, and for that reason there was no error in the action of the court below in refusing to allow it to be filed.

4. PLEADING—*Verification of Plea—Section 3299, Code of 1904.*—In an action by an indorser who had paid a note against the makers, two of the makers filed a special plea alleging that the plaintiff ought not to have and to maintain his action for the ten per cent. attorney fee demanded because the sum demanded was unreasonable, unjust, inequitable, unfair and oppressive.

*Held:* That there was no error in the action of the court below in sustaining a general objection to the plea, as the plea was not verified by affidavit as required by section 3299, Code of 1904, nor did it allege the amount to which the defendants were entitled by reason of the matters contained in the plea, as required by that section.

5. LEGAL CONCLUSIONS—*Allegation of Bad Pleading.*—A plea is bad which alleges mere conclusions of law and does not allege the facts from which those conclusions are sought to be drawn with sufficient detail and certainty to apprise the opposite party of the nature of the defense and to enable the court upon the facts admitted or found to decide whether the matter relied on constituted a valid claim to the relief sought. Accordingly, it was held that the plea referred to in the next preceding syllabus is bad for this reason.

6. PLEADING—*Special Plea—General Issue—Bills, Notes and Checks —Attorney's Fees.*—In an action by an indorser who has taken up the note against the makers, there was no error in refusing to allow a special plea to be filed alleging that the plaintiff was entitled to recover only such costs of collection as he in fact paid and was legally bound to pay his own attorney, as that defense could have been as well made under a plea of the general issue as by special plea.

7. BILLS, NOTES AND CHECKS—*Attorney's Fees.*—The makers and indorsers of a note agreed to pay costs of collection or ten per cent. attorney's fee in case payment should not be made at maturity.

*Held:* That although the plaintiff, an indorser who took up the note upon maturity, might not have paid the payees or indorsees of the note any costs of collection or attorney's fee, yet if by reason of the default of the makers of or other prior parties to the obligation, the plaintiff after the payment of it by him had to place the note in the hands of an attorney for collection, he was entitled to recover judgment against the

83

makers of and prior parties to the obligation for such an amount of expense incurred by him of costs of collection or attorney's fee as the contract when properly construed provides for.

8. BILLS, NOTES AND CHECKS—*Parol Evidence—Relation of the Parties.*—As between the parties liable upon a note having knowledge of their true relations one to another, parol evidence is admissible to show such true relationship regardless of where the signatures appear on the note, whether as maker or indorsers and regardless of the order of sequence of the indorsements. And by statute in Virginia (subsection 68 of section 2841-a of the negotiable instrument law), it is provided as follows: "As respects one another, indorsers are liable *prima facie* in the order in which they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise."

9. BILLS, NOTES AND CHECKS—*Plea that Makers were Really Indorsers.*—In an action by an indorser who had paid and taken up the note at maturity, two of the makers filed a special plea that they were only indorsers on the note as was the plaintiff, and the plaintiff knew at the time that they were only indorsers jointly liable with him.

*Held:* That this would have been a good plea if it had contained the further allegation that the plaintiff and defendants had agreed at the time of their execution or indorsement of the note that they should be jointly liable as sureties for the true makers and principal obligors, or allegations to that effect; as the plea, however, contained no such allegation, it was fatally defective.

10. BILLS, NOTES AND CHECKS—*Liability of Indorsers Successive.*— The long and universally established rule at common law is that "* * * the liability of indorsers, in the absence of special agreement, is successive and not joint." This rule has become a part of our statute law (subsection 68 of section 2841-a of the Code of 1904). In the instant case it appeared from the note in suit that the plaintiff was the last indorser thereof, except the payees named in the note. In the special plea referred to in the next preceding syllabus there was no allegation that the plaintiff indorsed the note prior to the signing of it by the defendants setting up the plea. Hence taking the allegation of the plea to be true that the defendants were mere indorsers of the note, still on the face of the record they were prior indorsers to the plaintiff. And in the absence of any allegation in the plea of an actual agreement between the parties that their liability should be otherwise, the *prima facie* order of liability negatives the conclusion of the plea and renders it bad.

11. JUDGMENTS AND DECREES—*Nunc Pro Tunc Judgment—When*

*Entered.*—There are two classes of cases in which it has been held proper to enter judgments and decrees *nunc pro tunc.* The first class embraces those cases in which the suitors have done all in their power to place the cause in a condition to be decided by the court, but in which, owing to the delay of the court, no final judgment has been entered. The second class embraces those cases in which judgments though pronounced by the court, have, from accident or mistake of the officers of the court, never been entered on the records of the court.

12. JUDGMENTS AND DECREES—*Nunc Pro Tunc Judgments—How the Court Acts in First Class.*—In the first class of cases as mentioned in syllabus 11, the court uses the papers and proceedings and evidence in the case, as the same existed at the time to which the order or decree is proposed to relate back, as the basis of its action, and acts on such record at the subsequent time when the motion for the *nunc pro tunc* order or decree is made. The court enters "now for then" such order or decree as it finds from such record the party moving for the *nunc pro tunc* order was "then" entitled to, and it is held that this power should be exercised with great caution and circumspection.

13. JUDGMENTS AND DECREES—*Nunc Pro Tunc Judgments—Practice in Virginia.*—In view of the history of *nunc pro tunc* judgments and decrees and of section 3567, Code of 1904, the Supreme Court of Appeals is of opinion that whatever may be true of other jurisdictions, in Virginia the courts no longer possess the power to enter *nunc pro tunc* judgments in cases falling within the first class, but only possess such power in cases falling within the second class mentioned in syllabus 11. That is to say, in Virginia practice the office of a judgment *nunc pro tunc* is to record some act of the court done at a former time which was not then carried into the record, and the power of the court to make such entries is restricted to placing upon the record evidence of judicial action which has been actually taken. It may be used to make the record speak the truth, but not to make it speak what it did not speak but ought to have spoken. If the court has not rendered a judgment that it might or should have rendered, it has no power to remedy these errors or omissions by ordering the entry *nunc pro tunc* of a proper judgment.

14. JUDGMENTS AND DECREES—*Nunc Pro Tunc Judgments—Practice in Virginia.*—In all cases in Virginia since the Acts of 1897-8, p. 507, Code of 1904, section 3567, the exercise of the power to enter judgment *nunc pro tunc* presupposes the actual rendition of a judgment and a mere right to a judgment will not furnish the basis for such an entry.

15. APPEAL AND ERROR—*Erroneous Entry of Judgment Nunc Pro*

*Tunc—New Trial.*—Where the only error in the record was. the erroneous entry of a judgment *nunc pro tunc*, it might have been cured by entry of the same judgment by the Supreme Court of Appeals to take effect as of the date on which it was. in fact entered by the court below. But in view of the fact. that the plaintiffs in error claimed to have several substantial defenses attempted to be set up by special pleas and of the fact that the defects in such pleas were formal, the Supreme Court of Appeals granted a new trial of the case so that the plaintiffs in error might have an opportunity to amend such pleas and thus properly present their defenses to the plaintiff's demand, should they be so advised.

16. BILLS, NOTES AND CHECKS—*Attorney's Fees—Special Plea Under Section 3299 of the Code of 1904—General Issue—General Denial.*—The defense in an action by an indorser, who has taken up and paid the note at maturity against the makers, that the amount claimed by plaintiff as attorney's fee under the obligation sued on and provided for therein is unreasonable in amount or unconscionable, can be made by special plea under section 3299 of the Code of 1904, although there is no necessity therefor. As the contract in suit is not under seal and the defendant seeks no recovery of any excess over the plaintiff's demand, the defense can be set up under the general issue of non-assumpsit, if the action be one in assumpsit, and the issue made by a general denial of the facts alleged in the notice of motion for judgment is not less comprehensive.

17. STATUTES—*Construction—Ejusdem Generis—Section 3299, Code of 1904.*—Section 3299, Code of 1904, provides that defendant may file a plea alleging any failure in the consideration of the contract or fraud in its procurement, or any breach of any warranty to him of the title or the soundness of personal property, or any other matter as would entitle him either to recover damages at law from the plaintiff or relief in equity against the obligation of the contract. The connection of the language of the statute is such that the words "or any other matter" do not refer to matters of the same kind previously mentioned in the statute except in one particular, namely, in the particular that they must contain the feature of being matters directly connected with and injuries growing out of the contract sued on.

18. STATUTES—*Ejusdem Generis—Extent of Rule.*—The *ejusdem generis* rule is only a rule of construction and intended to throw light on a statute of otherwise doubtful import and has no application where the language of the statute plainly manifests a contrary purpose. In such case the obvious intention of the legislature must be given effect rather than defeated by the misapplication of the rule.

19. PLEADING—*Recoupment—Section 3299, Code of 1904—Purpose of Section.*—The purpose of section 3299, Code of 1904, plainly is to allow all matters in controversy between the ·plaintiff and defendant arising out of the same cause of action—*i. e.*, all matters of recoupment—to be disposed of in one action at law, so as to avoid the necessity of a separate suit having to be brought by the defendant, whether at law or in equity, to determine any such matter.

20. BILLS, NOTES AND CHECKS—*Attorney's Fee—Special Plea Under Section 3299, Code of 1904—Allegation of Amount—Verification.*—If in an action by an indorser against the maker of a note, defense by way of special plea under section 3299, Code of 1904, be adopted to plaintiff's claim for attorney's fee, the plea should allege the amount to the extent of which the defendant claims the attorney's fee in question is unreasonable or unconscionable, and should also allege the facts on which such claim is based with sufficient detail and certainty to apprise the plaintiff of the nature of the defense and to enable the court, on the facts being found or admitted, to decide whether the matter relied on constitutes a valid claim to the relief sought. And the plea should be verified by affidavit.

21. ATTORNEY'S FEES—*Questions of Law and Fact.*—In every case,· the facts being admitted or found, the determination of what may be recovered as an attorney's fee under a provision in the obligation in suit creating the obligation of payment of such a fee, is for the judge of the trial court in an action at law, and, of course, is also for such judge where the question arises in a suit in equity.

22. BILLS, NOTES AND CHECKS—*Attorney's Fees—Amount Recoverable.*—Upon the issue being made as to what amount is recoverable under a provision in a note for attorney's fees, the judge should allow only such an amount as may be reasonable, considering the services of the attorney actually performed in and about the collection of the debt in view of the customary charges of the profession in the locality for such services, not exceeding the maximum amount stipulated in the obligation. And where the services of an attorney are not in fact employed by the holder of the obligation, and the latter party seeks such recovery, no recovery should be allowed of any attorney's fee.

23. BILLS, NOTES AND CHECKS—*Attorney's Fees—Construction of Provision for—"Costs of Collection."*—A note contained the following provision: "The makers and indorsers of this note hereby * * * agree to pay costs of collection or ten per cent. attorney's fee in case payment shall not be made at maturity." "Costs of collection" refers not to cost of suit, which are recoverable by law, but to the "attorney's fee" for services in

making or attempting to make collection. The proper construc-- tion of the provision in the note under consideration therefore is that the makers and indorsers of the note agreed to pay the lawful holder thereof such reasonable attorney's fee as such holder may actually incur for services of attorney in making collection thereof, not exceeding ten per cent. maximum stipulated.

24. Bills, Notes and Checks—*Attorney's Fees—Validity of Provision for.*—The provision for attorney's fees set out in the pre-- ceding syllabus is in substance as if it had been to pay such reasonable attorney's fee for collection actually incurred by the lawful holder of the note, up to but not exceeding ten per cent. of the amount of the debt due to the holder of the note, prin-- cipal and interest, in case of nonpayment of the note at maturity. The rule in this State is, in effect, that such a contract is valid and enforceable to the exen of a reasonable at-- torny's fee. incurred as aforesaid, not exceeding the percent-- age named in the note.

Error to a judgment of the Circuit Court of Scott county in a proceeding by motion for a judgment for money. Judg-- ment for plaintiff. Defendants assign error.

*Reversed and remanded.*

This action at law was instituted in the court below by the defendant in error, Hagan (hereinafter referred to as plaintiff, or as plaintiff in the court below), by the follow-- ing notice of motion for judgment:

"To R. W. Cox, L. F. Cox, Mrs. R. W. Cox, Mary Cox, G. B. Bickley and R. E. Bickley: ·

"You and each of you are hereby notified that on the 1st day of the next term of the Circuit Court for Scott county (being the September term, 1917), I will move the Circuit Court for Scott county for a judgment against you and each of you for the sum of $2,750, with interest thereon from the 28th day of June, 1917, until paid, the same being due by you to me on account of a certain note executed by all

of you as makers, payable to Head & Sloan, bearing date December 28, 1916, and due six months after date, for the sum of $2,500, which said note was indorsed by me and which note not having been paid at maturity by either of you, as you had agreed, demand was made upon me for payment thereof, and payment thereof was accordingly made by me on the 29th day of June, 1917, by the terms of which note it is provided that all homestead exemptions are waived, and in which you and each of you agreed to pay ten per cent attorney's fees for collection in case payment thereof should not be made at maturity, and by reason of said note and the provisions thereof, and the non-payment thereof by you and the payment thereof by me to the holder thereof, and by reasons of said note having been placed in the hands of attorneys for collection and action hath accrued to me to have and demand of you the said sum of $2,750, above mentioned, which said note is in the following words and figures, to-wit:

"Gate City, Va., Dec. 28, 1916.
"Due June 28, 1917—$2,500.

"Six months after date we, or either of the makers or indorsers, value received, promise to pay to the order of Head & Sloan twenty-five hundred dollars.

"Negotiable and payable at the People's National Bank of Gate City, Va., with six per cent interest after maturity.

"The makers and indorsers of this note hereby waive presentment protest and notice of dishonor, and consent that the time of payment may be extended without notice thereof and hereby waive the benfit of their homestead exemptions as to this obligation; and further agree to pay costs of collection, or ten per cent attorney's fee in case payment shall not be made at maturity.

"R. W. Cox,
L. F. Cox,

> MRS. R. W. COX,
> MARY COX,
> G. B. BICKLEY,
> R. E. BICKLEY.

"Which said note was endorsed as follows:

> "C. F. HAGAN,
> HEAD & SLOAN,
> By D. C. SLOAN.

"Respectfully,

> CHARLES F. HAGAN,
> By ROBERT L. PENNINGTON, Attorney."

On the calling of said notice of motion for judgment, the defendants, L. F. Cox and Mary Cox, offered two special pleas, designated as plea No. 1 and plea No. 2, which are as follows:

"Plea No. 1.—This day came the defendants, L. F. Cox and Mary Cox, by counsel, and say that the plaintiff ought not further to have and to maintain his action against them at this time because the said note, and the sum demanded in the notice, is the note and the amount due and owing by the Sulphur Springs Lumber Company, a partnership composed of R. W. Cox and G. B. Bickley, and said money was put and placed into the business of the said Sulphur Springs Lumber Company and was used therein, and these defendants further say that the said firm of the Sulphur Springs Lumber Company and the members of said firm, viz: R. W. Cox and G. B. Bickley, have been duly adjudged bankrupts, by the District Court for the Western District of Virginia, and the said proceeding is now pending in said court. These defendants further say that the said note was filed as a part of the indebtedness of said partnership and the members thereof. These defendants are only sureties on said notes, and the plaintiff recognized the truth of this plea

by filing the said note, or proof thereof, with the referee in bankruptcy, to whom the aforesaid bankruptcy proceeding was referred.

"The foregoing plea was sworn to before me September 5, 1917.                                    D. C."

"Plea No. 2.—This day came the defendants, L. F. Cox and Mary Cox, by counsel, and say that the plaintiff ought not to have and to maintain his action for the ten per centum attorney demanded in said notice because the said sum demanded is unreasonable, unjust, inequitable, unfair and oppressive. And this, defendants are ready to verify."

The plaintiff thereupon objected to the filing of such pleas, and the court sustained the objection, to which action of the court the two defendants, who are the plaintiffs in error, excepted. The record does not disclose whether any specific grounds of objection to the pleas were assigned before the court below or whether such specification was asked for there by the plaintiffs in error.

Upon such objection to the pleas being sustained as aforesaid, the plaintiffs in error, did not plead the general issue or interpose a demurrer or any other plea in defense of the action or attempt to do so, at that time or during that term of the court.

The other defendants interposed no defense whatever to the action, and the following entry was made by the clerk on the court docket:

"C. F. Hagan

          vs.                    Notice of motion.

"L. F. Cox, et als.

"Judgment against Mrs. R. W. Cox and R. E. Bickley (see papers).

          "(Order entered at September term, 1917.)"

And on a subsequent day of the same term of court, towit, on Thursday, September 13, 1917, judgment was entered in favor of the plaintiff against the defendants, Mrs.

84

R. W. Cox and R. E. Bickley, "for the sum of twenty-five hundred dollars ($2,500), with interest from the 28th day of June, 1917, until paid, and the costs of this suit, together with ten (10) per cent attorney's fee thereon."

No other order was entered and no other memorandum was made concerning the case by the clerk or judge at that term of the court.

At the January term, 1918, of the court the plaintiff moved the court to enter a *nunc pro tunc* order giving judgment in his favor against the defendants, who are the plaintiffs in error.

The record does not disclose on what ground such motion was made.

When the plaintiff, by counsel, asked the court at its January term for such *nunc pro tunc* order, the plaintiffs in error offered and asked the court before such order was entered to be allowed to file two additional pleas, designated plea No. 3 and plea No. 4, which are as follows:

"Plea No. 3.—The defendants, L. F. Cox and Mary Cox, come and say that the plaintiff ought not to have and to maintain his action for the ten per centum attorney's fee in the notice of motion for judgment demanded, because the said notice shows that said C. F. Hagan is an indorser of the note sued on, and does not show that he paid nor that he was legally bound to pay said attorney's fee. And of this they put themselves upon the country, and this they are ready to verify."

"Plea No. 4.—The defendants come and say that the said C. F. Hagan ought not to have and to maintain his action for the sum in the notice demanded because the said note was executed by R. W. Cox and G. B. Bickley, and these defendants were only indorsers on the note, as was the plaintiff. The note was executed for the benefit of the Sulphur Springs Lumber Company, composed by R. W. Cox and G. B. Bickley, and the money procured went into the business

of said company. The plaintiff knew at the time that these defendants were only indorsers and jointly liable with him. The plaintiff is only entitled to recover the pro rata amount due by these defendants as indorsers, because each indorser assumes the same liability as every other. And this they are ready to verify."

The plaintiff thereupon objected to the filing of such pleas, and the court sustained the objection.

The record is the same in its lack of disclosure, with respect to whether any specific grounds of objection were assigned before the court below to these pleas or were called for there by the plaintiffs in error, as is noted above with regard to the pleas Nos. 1 and 2, aforesaid. The record is also the same upon the point that upon the objection to pleas Nos. 3 and 4 being sustained the plaintiffs in error interposed no further defense to the action. And so far as the record discloses, there was not at any time a trial of the case as if upon any issue joined.

The court, thereupon, at the January term, 1918, on said motion of the plaintiff, entered the *nunc pro tunc* order under review as an order which "should have been entered at the September term, 1917," which order rendered judgment in favor of the plaintiff against the plaintiffs in error for the sum of $2,750 "with interest from the 28th day of June. 1917, until paid, and the costs of this action, the amount claimed in the plaintiff's notice of motion."

*W. S. Cox,* for the plaintiff in error.

*R. L. Pennington,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The material questions raised by the assignments of error will be disposed of in their order as stated below.

[1, 2]   1. Was there error in the action of the court below in sustaining the general objection of the plaintiff to special plea No. 1 set forth in the statement preceding this opinion?

This question must be answered in the negative.

The plea is, in substance, that although the signatures of the plaintiffs in error appear on the note in said suit as co-makers, they were not in fact principal obligors, but sureties only for certain co-makers of the note, the latter being in truth the principal obligors. The plea, however, does not allege that the plaintiff had any notice of such suretyship relation of the parties before he indorsed the note. Now,  while as between themselves, parol evidence is admissible to show the actual relations to one another of apparent joint-makers of a note, as that the relationship of surety in truth exists as to one or more of them (8 Cyc. [K], pp. 262-3; 8 C. J., sec. 106, p. 70), yet such evidence is admissible only against parties having knowledge of such relationship at the time of the entering into the contract by them. (*Idem.*, p. 264.)   "If a person sign a note as maker, but is, in fact, a surety, and there is nothing on the face of the note to show his true relation, he will be treated and considered as a principal, with respect to all who have no notice of the suretyship." 3 R. C. L., sec. 354, p. 1138. See also 8 C. J., sec. 105, p. 69-70.

[3]   The plaintiff was the last indorser on the note, other than the payees and indorsees thereof named therein, and paid and took up the note upon default as set forth in the statement preceding this opinion.  "* * * an indorser of a note who, upon the default of the maker, satisfies the demands of the indorsee, and takes up the note, becomes the lawful holder and may enforce the terms of the contract against all prior indorsers * * * as well as against the maker * * *." 3 R. C. L., sec. 337, p. 1121.

It is, therefore, immaterial, so far as the plaintiff's right of action was concerned, whether the plaintiffs in error were makers or indorsers of or sureties on the note. As to the plaintiff they were all principal obligors, unless indeed there had been an agreement between themselves and the plaintiff that their obligation should be otherwise, which the plea, as aforesaid, does not allege. Hence, the plea under consideration interposed no valid defense to the action, and for that reason there was no error in the action of the court below in refusing to allow it to be filed.

[4] 2. Was there error in the action of the court below in sustaining the general objection of the plaintiff to special plea No. 2 set forth in the statement preceding this opinion?

This question must be answered in the negative for several reasons.

(a) The plea is not verified by affidavit as required by the statute under which it was filed. See section 3299 of the Code. *Watkins* v. *Hopkins*, 13 Gratt. (54 Va.) 743.

(b) The plea does not allege "the amount to which he" (the defendant) "is entitled by reason of the matters contained in the plea," as is required by such statute. *Tyson* v. *Williamson*, 96 Va. 636, 32 S. E. 42; *Richmond Ice Co.* v. *Crystal Ice Co.*, 99 Va. 239, 37 S. E. 851.

[5] (c) The plea is bad because it violates the rule against the allegation of mere conclusions of law and does not allege the facts from which those conclusions are sought to be drawn with sufficient detail and certainty to apprise the opposite party of the nature of the defense and to enable the court upon the facts admitted or found to decide whether the matter relied on constituted a valid claim to the relief sought. *Burtners* v. *Keran*, 24 Gratt. (65 Va.) 42; *Watkins* v. *Hopkins, supra,* 13 Gratt. (54 Va.) 743.

[6] 3. Was there error in the action of the court below in sustaining the general objection of the plaintiff to spe-

cial plea No. 3 set forth in the statement preceding this opinion?

This question must be answered in the negative.

If the plea here under consideration means to allege that the plaintiff was entitled to recover only such costs of collection as he in fact paid and was legally bound to pay his own attorney, that defense could have been as well made under a plea of the general issue as by special plea. There was, therefore, in such case no error in the action of the court in refusing to allow such special plea to be filed.

[7] If the plea means to allege that the plaintiff was entitled to recover only such costs of collection or attorney's fee as he paid and was legally bound to pay to the payee or indorsees of the note who held it at the time the plaintiff paid the note, this position is not sustained by the provisions of the note aforesaid on the subject. Such provisions constitute the terms of the contract on that subject which the plaintiff as lawful holder of the note after its payment by him had the right to enforce against the makers and all prior indorsers of the note. The note expressly provides that: "The makers and indorsers of this note  *  *  * agree to pay costs of collection or ten per cent attorney's fee in case payment shall not be made at maturity." Therefore, although the plaintiff may not have paid the payees or indorsees of the note any costs of collection or attorney's fee, yet if by reason of the default of the makers of or other prior parties to the obligation, the plaintiff after the payment of it by him, aforesaid, had to place the note in the hands of an attorney for collection, as he alleges in the notice for judgment was done, he was entitled to recover judgment against the makers of and prior parties to the obligation for such an amount of expense incurred by him of costs of collection or attorney's fee as the contract when properly construed provides for. For this reason also the court

below was right in refusing to allow the plea under consideration to be filed.

4. Was there error in the action of the court below in sustaining the general objection of the plaintiff to special plea No. 4 set forth in the statement preceding this opinion?

This question must be answered in the negative.

[8-10] This plea is, in substance, the same as special plea No. 1, above mentioned, except that it alleges that the plaintiff knew of the suretyship alleged at the time the note was executed, and that the plaintiffs in error were in truth merely indorsers of the note. While there is much conflict among the authorities on the subject, the prevailing rule seems to be that as between the parties liable upon a note having knowledge of their true relations one to another, parol evidence is admissible to show such true relationship regardless of where the signatures appear on the note, whether as maker or indorsers, and regardless of the order of sequence of the indorsements. (8 Cyc. [K], pp. 262-3; 3 R. C. L., sec. 338, p. 1123). And by statute with us (subsection 68 of section 2841-a of the negotiable instrument law), it is provided as follows: "As respects one another, indorsers are liable *prima facie* in the order in which they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise." The plea under consideration would, therefore, have been a good plea if it had contained the further allegation that the plaintiff in the court below and the plaintiffs in error had *agreed* at the time of their execution or indorsement of the note that they should be jointly liable as sureties for the true makers and principal obligors, or allegations to that effect. The plea, however, contains no such allegation, and it is fatally defective because of the lack of such allegation. The plea does allege that the "plaintiff knew at the time that these defendants were only * * * jointly liable with him," and that "the plaintiff is only entitled to recover the

pro rata amount due by these defendants as indorsers, because each indorser assumes the same liability as every other;" but this is a mere conclusion of law, and an erroneous one. The long and universally established rule at common law is that "* * * the liability of indorsers, in the absence of special agreement, is successive and not joint" (3 R. C. L., sec. 349, p. 1135). This rule has become a part of our statute law, as aforesaid (subsection 68 of section 2841-a of the Code). It appears from the note in suit, as aforesaid, that the plaintiff is the last indorser thereof, except the payees named in the note. There is no allegation in the plea under consideration that the plaintiff endorsed the note prior to the signing of it by the plaintiffs in error. Hence, taking the allegation of the plea to be true that the plaintiffs in error were mere indorsers of the note, still on the face of the record they were prior endorsers to the plaintiff. And in the absence of any allegation in the plea of an actual agreement between the parties that their liability should be otherwise, the *prima facie* order of liability aforesaid, now fixed by statute with us, negatives the conclusion of the plea and renders it bad.

[11]    5. Was there error in the action of the court below in entering the judgment against the plaintiffs in error by a *nunc pro tunc* order?

This question must be answered in the affirmative.

As laid down by the authorities on the subject which are relied on by the plaintiff in the court below: "There are two classes of cases in which it has been held proper to enter judgments and decrees *nunc pro tunc*. The first class embraces those cases in which the suitors have done all in their power to place the cause in a condition to be decided by the court, but, in which, owing to the delay of the court, no final judgment has been entered. The second class embraces those cases in which judgments, though pronounced by the court, have, from accident or mistake of the officers

of the court, never been entered on the records of the court." Note in 4 Am. St. Rep., at pp. 828-830. See, to same effect, Freeman on Judgments (4th ed.), sec. 57.

[12] The order in the instant case must be sustained, if at all, as having been entered in the first class of cases above mentioned. In such class of cases the court uses the papers and proceedings and evidence in the case, as the same existed at the time to which the order or decree is proposd to relate back, as the basis of its action, and acts on such record at the subsequent time when the motion for the *nunc pro tunc* order or decree is made. The court enters "now for then" such order or decree as it finds from such record the party moving for the *nunc pro tunc* order was "then" entitled to.

[13, 14] It will be at once perceived that such practice, if generally pursued, would greatly tend to destroy that confidence which is, and of right ought to be, reposed in the verity of judgments. Accordingly, the authorities hold that "the power to affect their operation or change their import by judgment or orders *nunc pro tunc* should be exercised with caution and circumspection" (15 R. C. L., sec. 63, p. 622), and we find it laid down by the very authorities relied on by the plaintiff, that "no case could be ranked among the first class in which the delay to render or enter judgment was imputable to any negligence or even misapprehension of the parties" (Freeman on Judgments, sec. 57) ; and that the practice of entering such judgments in the first class of cases was confined "chiefly, if not exclusively, to those cases where, after trial and submission of a case, one of the parties died * * *." That "as the suitor, who brought his action on to trial and caused it to be heard and submitted, had manifestly been guilty of no *laches*, the court protected him from any prejudice he might suffer by the death of his adversary after such submission, and instead of permitting the action to abate, directed the

judgment to be given effect, of necessity, as far back as the day of submission" (*Idem.*, sec. 57). In the note in 4 Am. St. Rep., *supra.*, at p. 830, it is also said, it is true, that while the cases in which *nunc pro tunc* judgments are ordered without any judgment actually rendered by the court nearly always arise from the death of one of the parties, yet "they are not always restricted to that cause." But the only other character of cases cited in which such a judgment has been entered is that of *Springfield* v. *Worcester*, 2 Cush. (Mass.) 52, where "while judgment was suspended to permit a hearing of reserved questions of law, the statute upon which the action was brought was repealed without a saving clause. * * * Under these circumstances the court ordered a judgment to be entered as of a day prior to the date of the repeal of the statute." But the better rule seems to be that in such case the court had no jurisdiction to enter such a *nunc pro tunc* order. 15 R. C. L., sec. 63, p. 622. And as to the need of *nunc pro tunc* judgments or decrees to protect suitors from prejudice they might otherwise suffer by the death of adversaries, that was met at common law by the fiction of making judgments bear date as of the first day of the term, if the case was so matured on docket that judgment might have been entered on that day, upon the theory that the entire term of court is in contemplation of law but one day. 15 R. C. L., sec. 57, pp. 617-618. This fiction of the law has been long regulated by statute with us. Sec. 3567 of the Code; 2 Barton's Chy. Pr., p. 917-918, 928; Burks' Pl. & Pr., p. 607. Prior to the amendment of section 3567, aforesaid, by Acts of 1897-8, p. 507 (subject to certain statutory provisions concerning the docketing thereof in order to affect purchasers for valuable consideration without notice) the lien of a judgment entered in court in a cause on docket and so matured that judgment might have been rendered on the first day of the term, although entered after the commencement of the term, related back to the first day of the term.

But since such amendment, such statute has provided that: "The lien of a judgment shall in no case relate back to a day or other time prior to that on or at which the judgment was rendered." See 2 Pollard's Code 1904, section 3567, and note, and authorities there cited. In view of the history of the subject and of the last-mentioned statutory provision, we are of opinion that, whatever may be true of other jurisdictions, with us the courts no longer possess the power to enter *nunc pro tunc* judgments in cases falling within the first class, but only possess such power in cases falling within the second class, above mentioned. That is to say, we are of opinion that with us "the office of a judgment *nunc pro tunc* is to record some act of the court done at a former time which was not then carried into the record and the power of the court to make such entries is restricted to placing upon the record evidence of judicial action which has been actually taken. It may be used to make the record speak the truth, but not to make it speak what it did not speak, but ought to have spoken. If the court has not rendered a judgment that it might or should have rendered * * * it has no power to remedy these errors or omissions by ordering the entry *nunc pro tunc* of a proper judgment. * * * In all cases" (in this State, certainly since said statute of the Acts of 1897-8 was enacted) "the exercise of the power to enter judgments *nunc pro tunc* presupposed the actual rendition of a judgment, and a mere right to a judgment will not furnish the basis for such an entry." 15 R. C. L., sec. 64, pp. 622-3.

The judgment under review was, therefore, erroneous, and must be reversed.

[15] This being the only error we find in the record, it might be cured by entry of the same judgment by us to take effect as of the date on which it was in fact entered by the court below. But in view of the fact that the plaintiffs in error claim to have several substantial defenses

attempted to be set up by the special pleas aforesaid and of the fact that the defects in such pleas are formal, we feel that the plaintiffs in error should have an opportunity to amend such pleas and thus properly present such defenses to the plaintiff's demand, should they be so advised. We shall, therefore, grant a new trial of the case.

Having reached the above conclusion, it becomes necessary for us to refer to certain questions in connection with the attorney's fee provision in the note in suit, which are raised in the brief for the plaintiff (the defendant in error), and also to pass upon the proper construction which should be given to the provisions in the note in suit on the subject of the costs of collection and the attorney's fee therein mentioned about which question is also raised in the brief for plaintiff, since both subjects are likely to give rise to the same questions on a new trial.

[16] 6. The first questions next above referred to are whether the defense, that the amount claimed by a plaintiff as attorney's fee under the obligation sued on and provided for therein is unreasonable in amount or unconscionable, can be made by special plea under section 3299 of the Code? And if so, how the issue made by the plea should be tried, whether by the court without or with a jury?

Section 3299, aforesaid, so far as material, provides as follows:

"In any action on a contract, the defendant may file a plea alleging any such failure in the consideration of the contract or fraud in its procurement, or any such breach of any warranty to him of the title or the soundness of personal property, for the price or value thereof he entered into the contract, or any other matter as would entitle him either to recover damages at law from the plaintiff * * * or to relief in equity, in whole or in part, against the obligation of the contract; * * * and * * * alleging the amount to which he is entitled by reason of the matters

contained in the plea.   Every such plea shall be verified by' affidavit."

We are of opinion that the defense in question can be made by such plea, although there is no necessity therefor. Where the contract in suit is not under seal and the defendant seeks no recovery of any excess over the plaintiff's demand, the defense can be set up under the general issue of *non-assumpsit,* if the action be one in *assumpsit* (Burks' Pl. & Pr., sec. 739, pp. 448-452), and the issue made by a general denial of the facts alleged in the notice in the case in judgment is not less comprehensive.

[17-19]   The connection of the language of the statute is such that the words "or any other matter" do not refer to matters of the same kind previously mentioned in the statute except in one particular, namely, in the particular that they must contain the feature of being "matters directly connected with and injuries growing out of the contract sued on." *American Mang. Co.* v. *Va. Mang. Co.,* 91 Va. 272, at pp. 281-2, 21 S. E. 466, at p. 467.   As plainly set forth in the statute itself they are "any other matter as would entitle him" (the defendant) "to recover damages at law from the plaintiff   *   *   *   or to relief in equity, in whole or in part, *against the obligation of the contract."*. (Italics supplied.)   That the matters allowed to be pleaded under such statute must be such as would entitle the defendant to the recovery or relief mentioned *against the obligation of the contract sued on* is, plainly, the only restrictive meaning which is imposed by the *ejusdem generis* rule, when that rule is properly applied to the words "any other matter."   Such rule, as said by this court in *Commonwealth* v. *Werth,* 116 Va., at p. 607, 82 S. E., at p. 695, Ann. Cas. 1916 D, 1263, "is only a rule of construction and intended to throw light on a statute of otherwise doubtful import and has no application where the language of the statute plainly manifests a contrary purpose.   In such case the ob-

vious intention of the legislature must be given effect rather than defeated by the misapplication of the rule." The language of the statute under consideration, beginning with the words "or any other matter," etc., was not in the statute when the preceding portion of it was first enacted. Such language was added by act of March, 1873, (Acts 1872-3, p. 196), so that the purpose of the statute could be fully accomplished. That purpose plainly is to allow all matters in controversy between the plaintiff and defendant arising out of the same cause of action—*i. e.,* all matters of recoupment—to be disposed of in one action at law, so as to avoid the necessity of a separate suit having to be brought by the defendant, whether at law or in equity, to determine any such matter. *American Mang. Co.* v. *Va. Mang. Co., supra* (91 Va. 272, at p. 282, 21 S. E. 466) ; 1 Barton's Law Pr., p. 514, *et seq.;* 4 Minor's Inst., 706, *et seq.*

[20] If defense by way of special plea under section 3299 of the Code be adopted, the plea should allege the amount to the extent of which the defendant claims the attorney's fee in question is unreasonable or unconscionable, and should also allege the facts on which such claim is based with sufficient detail and certainty to apprise the plaintiff of the nature of the defense and to enable the court on the facts being found or admitted to decide whether the matter relied on constitutes a valid claim to the relief sought. And the plea should be verified by affidavit.

. As to the procedure upon the plea : The procedure should be the same as upon a plea under such statute of any other matter pleadable thereunder. If the issue upon the plea is such that the facts pleaded are admitted, the sufficiency of the defense, including the determination of what amount should be recovered as an attorney's fee, is for the determination of the judge. If the issue upon the plea is one of fact, that issue must be tried by jury, subject to such proper instruction as may be given by the judge, includ-

ing instruction as to what amount may be recovered as an attorney's fee under such a state of facts as may be found by the jury to exist, unless all matters of fact as well as of law are submitted for decision to the judge under the statute in such case made and provided or by consent of parties, in which latter case the determination of the amount recoverable as a reasonable attorney's fee, as well as of the facts in the case, is for the judge.

[21] In other words, in every case the facts being admitted or found, the determination of what may be recovered as an attorney's fee under a provision in the obligation in suit creating the obligation of payment of such a fee, is for the judge of the trial court in an action at law, and, of course, is also for such judge where the question arises in a suit in equity.

[22] Further, the judge, upon the issue being made as to what amount is recoverable under the attorney's fee provision, aforesaid, should allow only such an amount as may be reasonable, considering the services of the attorney actually performed in and about the collection of the debt in view of the customary charges of the profession in the locality for such services, not exceeding the maximum amount stipulated in the obligation. And where the services of an attorney are not in fact employed by the holder of the obligation, and the latter party seeks such recovery, no recovery should be allowed of any attorney's fee. *Bank* v. *Wood,* 125 Tenn. 6, 140 S. W. 31; 2 Va. Law Reg. (N. S.) 321; *Triplett* v. *Bank,* 121 Va. 189, 92 S. E. 897; *Colley* v. *Summers, etc., Co.,* 119 Va. 439, 89 S. E. 906, Ann. Cas. 1917-D, 375.

The question remaining for our consideration as likely to arise upon a new trial of the case, is as follows:

[23, 24] 7. What is the proper construction of the obligation in the note in suit on the subject of the attorney's fee?

The obligation of the note is in the following form: "The makers and indorsers of this note hereby * *. * agree to pay costs of collection *or* ten per cent attorney's fee in case payment shall not be made at maturity." (Italics supplied.)

. "Costs of collection" refers not to costs of suit, which are recoverable by law, but to the "attorney's fee" for services in making or attempting to make collection. 3 R. C. L., sec. 83, pp. 895-6. The proper construction of the provision in the note under consideration, therefore, is that the makers and indorsers of the note agreed to pay the lawful holder thereof such reasonable attorney's fee as such holder may actually incur for services of attorney in making collection thereof, not exceeding the ten per cent maximum stipulated, payment of the note not having been made by the former in accordance with their obligation. Such an agreement is the same in substance as if it had been to pay such reasonable attorney's fee for collection actually incurred by the lawful holder of the note, up to but not exceeding 10 per cent of the amount of the debt due to the holder of the note, principal and interest, in case of nonpayment of the note, as aforesaid, at maturity. The rule in this State is, in effect, that such a contract is valid and enforceable to the extent of a reasonable attorney's fee, incurred as aforesaid, not exceeding the percentage named in the note. *Colley* v. *Summers, etc., Co., supra,* 119 Va. 439, 89 S. E. 906, Ann. Cas. 1917 D, 375; *Triplett* v. *Bank, supra,* 121 Va. 189, 92 S. E. 897.

Because of the error of the court below in entering the judgment under review *nunc pro tunc,* the same will be set aside and annulled, with leave to the plaintiffs in error to amend their pleadings or to plead anew, and a new trial may be had by the plaintiffs in error, if they are so advised, not in conflict with the views expressed in this opinion.

*Reversed and remanded.*